908 P.2d 745

**RANCHO DEL VILLACITO CONDOMINIUMS, INC., a New Mexico corporation, and Kerry Kruskal, Plaintiffs–Counter–Defendants–Appellants,**

v.

**Eugene WEISFELD, Alcott & Weisfeld, a New Mexico partnership, and Colin C. Alcott, Defendants–Counter–Claimants–Appellees.**

**Martin D. KRUSKAL and RDV Investors, Ltd., a New Mexico limited partnership, Plaintiffs–Counter–Defendants–Appellants,**

v.

**Eugene WEISFELD, Alcott & Weisfeld, a New Mexico partnership, and Colin C. Alcott, Defendants–Counter–Claimants–Appellees.**

No. 21379.

Supreme Court of New Mexico.

Nov. 13, 1995.

Rehearing Denied Dec. 12, 1995.

John R. Tiwald, Albuquerque, Cynthia A. Fry, Albuquerque, for Appellants.

Rodey, Dickason, Sloan, Akin & Robb, P.A., John M. Brant, R. Nelson Franse, Albuquerque, for Appellees.

## OPINION

FROST, Justice.

1. Plaintiffs–Appellants Martin Kruskal, Rancho del Villacito Condominiums, Inc., Kerry Kruskal, and RDV Investors, Ltd. (collectively Kruskal), appeal from a dismissal with prejudice of a malpractice case against Defendants–Appellees Eugene Weisfeld, Colin Alcott, and Alcott & Weisfeld (collectively Weisfeld). Kruskal consented to the dismissal in order to appeal two rulings by the trial court relating to collateral estoppel and admission of evidence. However, we need not consider Kruskal's arguments regarding the correctness of the trial court's rulings, because we find that Kruskal's consent to dismissal with prejudice is fatal to his appeal in this case. We affirm.

## I. FACTS

2. This case arises out of a failed business venture involving Kruskal and Richard Moss. In 1980 Kruskal purchased property in Taos which he intended to develop into condominium units. Kruskal employed Weisfeld as his attorney for various legal matters, including setting up a corporation and partnership between Kruskal and Moss. Weisfeld also prepared the contract by which

Kruskal employed Moss as developer for the condominium project.

3. Over the course of the next year, Kruskal became concerned that Moss was violating his employment agreement and was improperly incurring excessive debt on behalf of the corporation. Kruskal claims he went to Weisfeld on several occasions for advice regarding Moss's alleged improprieties. Weisfeld allegedly advised Kruskal not to terminate Moss and to borrow additional amounts to cover the corporation's accounts payable. Kruskal contends that Weisfeld never warned him that his actions might constitute waiver or ratification of Moss's improprieties.

4. In April 1985, Kruskal and Moss agreed to submit their dispute to binding arbitration and appointed Weisfeld as arbitrator. The arbitration agreement recited that Weisfeld had disclosed his personal and legal relationships with both parties and that the parties waived any objections based on conflict of interest on the part of Weisfeld. In early 1986 Weisfeld rendered his arbitration decision, finding that Moss had violated his employment contract. However, Weisfeld also found that Kruskal had ratified Moss's acts, and either had waived any objection to Moss's violations or was estopped from raising objections based on his actions after learning of Moss's improprieties. This Court, in an unpublished decision, upheld the arbitration decision as a binding resolution of the issues between Kruskal and Moss. *Kruskal v. Moss*, No. 19,065, slip op. (N.M. Apr. 25, 1991).

5. Kruskal next initiated this malpractice claim against Weisfeld as arising out of the advice Weisfeld gave him. Kruskal brought his claim in light of Weisfeld's arbitration decision finding estoppel and waiver contrary to his earlier advice. In response, Weisfeld claimed that he correctly advised Kruskal that Kruskal's acts did not constitute waiver, but that he incorrectly found waiver and estoppel in his arbitration decision. He therefore contended that he did not commit malpractice because his advice as Kruskal's lawyer was correct. He also argued that he cannot be sued in malpractice for the errors he made in rendering his arbitration decision

because of arbitrator immunity. *See, e.g., Corey v. New York Stock Exch.*, 691 F.2d 1205, 1210–12 (6th Cir.1982) (discussing arbitrator immunity); 5 Am.Jur.2d *Arbitration and Award* § 107 (1962) (same).

6. Kruskal, confronted with this gordian knot of legal logic, moved to enter the findings of the arbitration decision into evidence and to make them binding on Weisfeld through collateral estoppel. Kruskal apparently agreed that, objectively, Weisfeld's original advice was correct, namely that there was no waiver or estoppel. However, Kruskal hoped to make Weisfeld's arbitration decision—finding that waiver and estoppel had occurred—binding on Weisfeld for purposes of determining whether his earlier advice to Kruskal constituted malpractice. The trial court refused to give the arbitration agreement binding effect and would not enter the arbitrator's specific findings into evidence.

7. The trial court's rulings were not final, appealable orders, and the court refused to certify the issues for interlocutory appeal. *See* NMSA 1978, § 39–3–4 (Repl.Pamp.1991) (interlocutory appeals); SCRA 1986, 12–203 (Repl.Pamp.1992) (same). Kruskal decided he could not present a prima facie case of malpractice without a ruling that the arbitration decision findings of waiver and estoppel were admissible and were binding on Weisfeld. Thus, on the eve of trial, Kruskal declined to present a case and consented to a dismissal with prejudice in order to bring an appeal from a final judgment.

## II. DISCUSSION

8. At the outset we are faced with the threshold question whether Kruskal may appeal a dismissal to which he consented. In *Gallup Trading Co. v. Michaels*, 86 N.M. 304, 305, 523 P.2d 548, 549 (1974), this Court held that,

It is the general rule that: "... A judgment by consent is in effect an admission by the parties that the decree is a just determination of their rights on the real facts of the case had they been found. It is ordinarily absolutely conclusive between

the parties, and cannot be appealed from or reviewed on a writ of error."

(quoting *Shaw v. Spelke*, 110 Conn. 208, 147 A. 675, 677 (1929)); *see also* 4 Am.Jur.2d *Appeal and Error* § 244 (1962) ("A judgment of dismissal or nonsuit rendered at the plaintiff's request or with his consent is not, as a general rule, reviewable at his instance."). In *Gallup Trading*, we concluded that because the appellant consented to the entry of summary judgment, he acquiesced in the judgment and lost his right to appeal. *Gallup Trading*, 86 N.M. at 305, 523 P.2d at 549.

9. Kruskal counters that other jurisdictions have allowed for an exception to this rule if the plaintiff's consent to dismissal is not completely voluntary. This exception applies when an adverse ruling by the trial court would effectively preclude recovery by the plaintiff or is completely dispositive of the case. *See, e.g., Wimberly v. Parrish*, 253 N.C. 536, 117 S.E.2d 472, 474 (1960) (holding, when "a judge intimates an opinion on the law which lies at the foundation of the action, adverse to the plaintiff, or excludes evidence offered by the plaintiff which is material and necessary to make out his case, he may submit to a nonsuit and appeal"); 4 Am. Jur.2d, *supra*, § 244. *See generally* C.R. McCorkle, Annotation, *Appellate Review at Instance of Plaintiff Who Has Requested, Induced, or Consented to Dismissal or Nonsuit*, 23 A.L.R.2d 664, 673 (1952 & Supp.1982 & Supp.1995).

10. A recent opinion by the Iowa Supreme Court, *Hense v. G.D. Searle & Co.*, 452 N.W.2d 440 (Iowa 1990), is instructive on this issue. In *Hense*, the Iowa Supreme Court considered whether to allow review of a consent judgment when "the plaintiff's consent [was] not truly voluntary when viewed in the light of prior rulings which [had] precluded recovery." *Id.* at 444. After examining cases from jurisdictions applying the strict "nonreviewability" approach and those allowing for a "lack of consent" exception, the court decided,

> On balance, we think the "lack of consent" exception to the rule of nonreviewability, rather than a strict appellate waiver rule, better reflects Iowa's general preference for considering cases on their merits. Moreover, it parallels the "voluntariness" exception this court has applied

to the general rule that a party who accepts the benefits of a judgment or decree may not appeal the provisions under which the benefits are awarded.

*Id.*

11. However, the *Hense* court went on to conclude, "Even applying this standard, however, plaintiff cannot prevail. Neither the trial court's final [ruling]—nor any other rulings preceding plaintiff's invited summary judgment—can fairly be said to have precluded plaintiff from recovering." *Id. See also* 4 Am.Jur.2d, *supra*, § 244 (noting that, to fall within the exception, "it is ordinarily required that the ruling be such as to preclude a recovery by the plaintiff in the present action, or, as sometimes expressed, that the ruling be completely dispositive of the case").

■ 12. In the present case, we need not decide whether to recognize a "lack of consent" exception to the general rule of nonreviewability of voluntary dismissals, because, as in *Hense*, Kruskal's voluntary dismissal does not fall within this exception. The trial court's rulings in this case were not completely dispositive of the cause of action, nor did they preclude recovery by Kruskal.

13. Kruskal's complaint for legal malpractice against Weisfeld alleged numerous failures and errors regarding the advice Weisfeld gave to Kruskal. However, in pursuing his case, Kruskal focused solely on whether Weisfeld's advice regarding waiver and estoppel was legally erroneous, and whether Kruskal's actions based on that advice constituted waiver or estoppel. Kruskal apparently concluded that Weisfeld's advice did in fact accurately reflect the law of waiver and estoppel, despite the findings in the arbitration decision. Kruskal then decided he could only prove malpractice by making the arbitration decision findings of waiver and estoppel binding for purposes of determining the correctness of Weisfeld's earlier advice.

■ 14. However, a malpractice claim does not necessarily turn on whether the lawyer's advice is legally accurate. As the Court of Appeals recently noted, "To recover on a claim of legal malpractice based on negligence, a plaintiff must prove three essential elements: (1) the employment of the defendant attorney; (2) the defendant attor-

ney's neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the plaintiff." *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 162–63, 848 P.2d 1086, 1089–90 (Ct.App.), *cert. denied*, 115 N.M. 60, 846 P.2d 1069 (1993). The Court continued, "As to the second element, a plaintiff must show, usually through expert testimony, that his or her attorney failed to use the skill, prudence, and diligence of an attorney of ordinary skill and capacity." *Id.* at 163, 848 P.2d at 1090.

15. Thus, the real issue in this case was not whether Weisfeld's advice was legally inaccurate, but whether his advice fell below the standard of care for an attorney of ordinary skill and capacity. The fact-finder would have evaluated this claim in light of Weisfeld's alleged errors and omissions in advising Kruskal, including any failures by Weisfeld to explain fully the legal implications and possible effects of pursuing his recommended course of action or of entering into arbitration and using Weisfeld as arbitrator. Kruskal, however, attempted to conclusively establish Weisfeld's negligence through the novel application of collateral estoppel. When the trial court ruled against this approach, Kruskal still could have presented a traditional case of malpractice, calling expert witnesses to testify that Weisfeld's advice, although not technically inaccurate, fell below the standard of care and resulted in damage to Kruskal.

16. We therefore find that the trial court's rulings on collateral estoppel and on the evidentiary value of the arbitration decision did not completely dispose of Kruskal's cause of action or preclude recovery. The rulings merely foreclosed one possible basis for recovery. We conclude that Kruskal is not entitled to appeal from his voluntary dismissal of his malpractice claim. To hold otherwise would be to allow plaintiffs to bring piecemeal appeals and to test alternative theories in the appellate courts at the expense of the defendant. *See Steenson v. Robinson*, 236 Or. 414, 385 P.2d 738, 739 n. 1 (1963) (en banc) (stating rationale for denying right to appeal a voluntary dismissal).

17. Because we conclude that the trial court's rulings were not dispositive of Kruskal's claims and that Kruskal therefore may not appeal from his voluntary dismissal, we need not address the merits of Kruskal's claims regarding the possible collateral estoppel effect or evidentiary use of the arbitration decision. Nor do we express any opinion on the merits of Kruskal's malpractice claim.

18. When we upheld the validity of the arbitration agreement in *Kruskal v. Moss*, we stated that simply because an attorney-arbitrator has previously represented one of the parties participating in the arbitration does not mean that he or she is automatically disqualified from acting as arbitrator for the subsequent dispute. Slip op. at 4; *see also* Model Code of Professional Responsibility EC 5–20 (1980). However, in so stating, we did not intend to endorse the common use of this practice. The practice of attorneys acting as arbitrators for their clients is fraught with potential dangers of ethical conflicts and should not be engaged in lightly.

19. The present case provides a vivid example of the hazards of attorneys arbitrating their clients' disputes. Although we do not pass on the ethical implications of Weisfeld's actions in this case, we find it difficult to conceive how an attorney, confronted with the realization (albeit mistaken) that his earlier advice to his client was incorrect and faced with the prospect of so ruling in a binding arbitration decision, would not feel compelled to withdraw as arbitrator. It is for this reason we suggested in our earlier decision that a malpractice claim "might conceivably be raised" between Kruskal and Weisfeld. *Kruskal*, slip op. at 5. However, Kruskal's tactical decision to dismiss voluntarily his malpractice claim against Weisfeld has foreclosed appellate review and has effectively precluded any further resolution of the issues raised in the underlying claim.

## III. CONCLUSION

20. We affirm the trial court's judgment of dismissal.

**21. IT IS SO ORDERED.**

BACA, C.J., and RANSOM, J., concur.