2003-NMCA-132

80 P.3d 482

**Deborah ANDREWS, Plaintiff–Appellant,**

v.

**Richard SAYLOR, as Personal Representative of the Estate of Susan J. Scarborough, deceased, the Albuquerque Law Clinic, and Bruce W. Barnett & Associates, P.A., Defendants–Appellees.**

**No. 22,694.**

Court of Appeals of New Mexico.

Sept. 25, 2003.

Certiorari Denied, No. 28,319, Nov. 4, 2003.

Daymon B. Ely, Law Offices of Damon B. Ely, Albuquerque, NM, for Plaintiff–Appellant.

R. Nelson Franse, John M. Brant, Charles K. Purcell, Charles Vigil, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, NM, for Defendants–Appellees.

*OPINION*

ALARID, Judge.

{1} This case presents us with a question of first impression concerning proximate cause in legal malpractice cases: does the judge or the jury decide whether an attorney's failure to appeal was a proximate cause of injury to the client? We hold that questions of proximate cause in legal malpractice cases are to be treated as questions of fact for the factfinder—in this case, the jury. We also consider the question of whether malpractice by successor attorneys hired to respond to the original attorney's malpractice is a foreseeable consequence of the original attorney's malpractice. We hold that it is. Lastly, we consider, and reject, a legal malpractice exception to the doctrine of comparative fault.

## BACKGROUND

{2} Plaintiff–Appellant, Deborah Andrews, and her husband, Stephen Andrews, were divorced in 1986, after approximately twelve years of marriage. During the marriage, Stephen worked for the Bernalillo County Fire Department (BCFD) and made contributions towards a pension pursuant to the Public Employees Retirement Act (PERA). NMSA 1953, §§ 5–5–1 to –31 (1953, as amended through 1986), superceded by 1987 N.M. Laws ch. 253. Plaintiff was aware that Stephen made contributions to a PERA account.

{3} A final decree granting the divorce was signed by District Judge Robert L. Thompson and was filed on May 29, 1986. The final decree contained the following provision dividing the parties' property:

> [P]etitioner shall have as her sole and separate property the "Golden Body Gym" business, the 1976 MG, and all other property presently in her possession; and, Respondent shall have as his sole and separate property the house at 2936 Dakota, N.E., the 1981 Honda, the 1973 Ford, and all other property presently in his possession.

{4} The final decree was prepared by Plaintiff's attorney, Defendant–Appellant, Susan J. Scarborough,[1] who was employed by Defendants–Appellants, Albuquerque Law Clinic, and Bruce W. Barrett & Associates. Stephen was not represented by an attorney. There is no provision in the final decree

---

1. Susan J. Scarborough died while this appeal was pending. Her death was suggested to this court; and, upon Plaintiff's motion, Richard Say- lor, the personal representative of her estate, has been substituted as Defendant–Appellee. Rule 12–301 NMRA 2003(A).

expressly declaring the parties' respective interests in the PERA benefits.

{5} In early 1996, Plaintiff encountered a friend who some years previously had also divorced an employee of the BCFD. By this time, both Stephen and the friend's former husband had retired from the BCFD, and were receiving PERA retirement benefits. Plaintiff's friend mentioned that she had been awarded, and was receiving, a share of the PERA benefits earned during her husband's employment with the BCFD.

{6} The friend's remarks led Plaintiff to hire an attorney to investigate Plaintiff's entitlement to a portion of the PERA benefits earned by Stephen during their marriage. In April 1996, this second attorney, Claudia Work, filed a "Petition to Divide Undivided Marital Property." The petition alleged that, by operation of community property law, Plaintiff was entitled to a 24% interest in Stephen's PERA retirement account. The petition requested that the district court divide Stephen's retirement account pursuant to the community property laws of the State of New Mexico. The petition to divide was docketed separately from the original divorce case and was assigned to District Judge William Lang. Judge Lang conducted an evidentiary hearing at which both Plaintiff and Stephen testified. The remarks of counsel indicate that the parties were proceeding pursuant to NMSA 1978, § 40–4–20(A) (1993).

{7} At the end of the hearing, Judge Lang ruled that the parties had intended to accomplish a complete division of all community property and that the 1986 final decree clearly and unambiguously divided all of the parties' community property, including the PERA account:

[T]here is an argument advanced by the petitioner, that somehow the state had possession of the account, and that I agree with [counsel for Stephen,] is a red herring indeed[.][I]t is the money of the contributor or in this instance Mr. Andrews, subject to the community interest at least during their marriage. The real issue is the language entered in the final decree and does it contemplate a final division of all of the property and debts of the parties,

and in my estimation and in this court[']s estimation having viewed a number of these, this final decree did that. The petitioner was represented by coun[sel], if there is a remedy here, perhaps it lies in that particular avenue[,] the final decree having been drafted by petitioner's coun[sel].... Ms. Scarborough was a licensed attorney at the time[.] [H]er failure to investigate, should in no way prejudice the rights of the parties, either of them, with respect to what is contained in the language of the decree. The language being clear and unambiguous that all community property was divided, that each takes the specifically enumerated items plus all other items in their personal property or property in your possession. Fully and fairly and satisfactorily divided the goods and debts of the parties in existence at that time, that is to say including the husband's retirement benefits through the Public Employees Retirement Administration[.][T]here was a failure to investigate apparently by petitioner's agent and that in no way induces or brings up any issue of fraud, there was no evidence that there was any attempt to hide anything, in fact it is clear and was stated by both parties that the petitioner knew of the existence of the retirement all during the course of the marriage[.] [E]ssentially, this is [r]es [j]udicata[.] [T]he issue of the retirement was negotiated and was resolved by the terms of the final decree. As is indicated by the clear and unambiguous language contained in the final decree, if there is a remedy in this matter, that the petitioner may have, it does not lie versus the respondent[,] but perhaps it lies elsewhere. I do not reach the issue of laches for the forgoing reasons; as there is legal defense and on the basis of what was presented in court today I will decree that the retirement benefits of the respondent were previously divided to the satisfaction of the parties as eviden[ced] by the clear and [un]ambiguous language of the final decree.

{8} After the hearing, but prior to entry of an order, Plaintiff hired attorney Thomas Nance Jones to take over the case from Work. Jones advised Plaintiff that he did not

believe there was a good chance of successfully appealing Judge Lang's ruling and that the cost of an appeal would be substantial. Plaintiff also consulted attorney William Gilstrap about pursuing a malpractice claim against Defendants. Gilstrap consulted with Jones regarding the viability of an appeal. The case was reassigned to District Judge Mark Macaron who entered an order denying Plaintiff's motion to divide the PERA benefits on April 15, 1998.

{9} Plaintiff did not appeal from the April 15, 1998 order. Instead, Plaintiff filed the present malpractice action on May 26, 1998. The malpractice action was assigned to Judge Robert L. Thompson, the same judge who had signed the 1986 final decree.

{10} Defendants moved for summary judgment on the ground that Plaintiff's failure to appeal from Judge Lang's ruling was the proximate cause of the loss of Plaintiff's share of PERA benefits. According to Defendants, Judge Lang erred by ruling that Stephen's interest in his PERA account constituted property presently in his possession. Defendants relied on cases from Texas holding that possession is a term of art referring to property over which the parties have physical control or at least the power of immediate enjoyment and disposition. Defendants argued that Stephen's PERA benefits were in the possession of the Retirement Board, which held them as a statutory trustee. Defendants argued that Plaintiff should have appealed the April 15, 1998 order.

{11} Plaintiff responded that (1) Judge Lang did not err in finding that Plaintiff and Stephen intended to include the PERA account in property presently in Stephen's possession; and (2) even if Judge Lang erred, his conduct was not an independent intervening cause. Plaintiff attached to her response portions of the deposition of her expert witness, attorney Barbara Shapiro. In her deposition testimony, Shapiro discussed the likelihood of successfully appealing from the April 15, 1998, order denying the motion to divide. In Shapiro's view, Plaintiff had a "good chance ... of losing the appeal."

{12} In their reply, Defendants asserted that they were not claiming that the alleged negligence of Plaintiff's successor attorneys

was an "intervening cause"; rather, it was Defendants' position that Plaintiff had not established causation "in the first place."

{13} Judge Thompson granted Defendants' motion for summary judgment. At the conclusion of the hearing on the motion, he explained his reasoning:

> Let me just say three or four things that I think cap it. The language [of the final decree] itself, I think, is clear and unambiguous. And I don't think the PERA is included, okay? I think had there been a timely appeal, the plaintiff would not have suffered injury.

> There's an undivided community asset protected by law, and I don't think she had any damages at the time of the decree because they were protected by law. And had the—and I hate to disagree with my fellow judge, because I may get reversed, but I think had he ruled according to the law, that my interpretation is there would have been no damages.

Plaintiff filed a timely notice of appeal.

## DISCUSSION

### 1. Who Determines Proximate Cause in a Legal Malpractice Case?

{14} "With few exceptions, proximate cause is a question of fact to be determined by the factfinder." *Lerma v. State Highway Dep't*, 117 N.M. 782, 784–85, 877 P.2d 1085, 1087–88 (1994). Defendants argue that Plaintiff's failure to appeal from the April 15, 1998, order was the proximate cause of Plaintiff's loss of her community share of retirement benefits from PERA because, according to Defendants, in a hypothetical past in which Plaintiff pursued an appeal, Plaintiff necessarily would have prevailed. Defendants argue that it would be improper to allow a jury to reconstruct this hypothetical past because, in doing so, the jury must decide the appeal, a task that in an actual appeal is the function of judges. Thus, Defendants ask us to create a legal-malpractice exception to the general rule that proximate cause is a question of fact to be determined by the factfinder.

{15} In a legal malpractice action involving a failure to appeal, proximate cause

# 550

ultimately reduces to a prediction as to what the outcome of a hypothetical appeal would have been. Significantly, under the preponderance-of-the-evidence standard applicable to legal malpractice actions, complete certainty as to the outcome of the hypothetical appeal is not required: the party bearing the burden of proof need only persuade the jury that the likelihood of a favorable outcome in the hypothetical appeal was greater than even. *See* UJI 13–304 NMRA 2003. Unlike an actual appellate decision, the jury's answer to the question of who more likely than not should have prevailed had an appeal been taken does not change the result in the earlier lawsuit and does not establish binding legal precedent in future lawsuits. *See Rodriguez v. Horton,* 95 N.M. 356, 360, 622 P.2d 261, 265 (Ct.App.1980) (rejecting the argument that a legal malpractice claim amounts to a collateral attack on the underlying judgment).

{16} We see no need for treating legal malpractice any differently than other types of professional malpractice. Although a district judge, as a lawyer, will have a general knowledge of the law and likely will have expertise in some areas, no lawyer is presumed to know all the law, much less to be an expert in every area of the law. *Cleckner v. Dale,* 719 S.W.2d 535, 542 (Tenn.Ct. App.1986). We are confident that a jury, aided by the testimony of experts versed in the relevant area of the law, is capable of making a prediction as to the outcome of a hypothetical appeal with the degree of certainty required by a preponderance-of-the-evidence standard of proof. *Charles Rein-hart Co. v. Winiemko,* 196 Mich.App. 110, 492 N.W.2d 505 (1992), *rev'd,* 444 Mich. 579, 513 N.W.2d 773 (1994).[2] We are concerned that our adoption of a special rule that insulates malpracticing lawyers from jury scrutiny of their conduct would give the public the impression that we are simply lawyers protecting other lawyers. *Millhouse v. Wiesenthal,* 775 S.W.2d 626, 629 (Tex.1989) (Mauzy, J., dissenting) (observing that "to say that the court is entitled to rule upon the question of causation as a matter of law in an appellate legal malpractice case gives the appearance that the bench is in the position of protecting the bar"; arguing that "[t]he privilege of being an attorney should not carry with it immunity from the jury system"). We therefore hold that in a legal malpractice action, the issue of proximate cause is a question of fact for the jury, and this is so even when proximate cause depends upon whether or not an appeal would have been successful.

{17} Defendants also argue that treating the issue of proximate cause as a question of fact will lead to the introduction of expert testimony in violation of the principle that "expert opinion testimony that seeks to state a legal conclusion is inadmissible." *State v. Clifford,* 117 N.M. 508, 513, 873 P.2d 254, 259 (1994). *Clifford* and the other cases relied upon by Defendants are not legal malpractice cases. Contrary to Defendants' position, New Mexico case law recognizes that in legal malpractice cases expert testimony is admissible to establish that an attorney breached the standard of care and that the breach resulted in damage to the client.[3]

---

**2.** Notwithstanding the subsequent reversal by the Michigan Supreme Court, we remain persuaded by the reasoning of the Michigan Court of Appeals and by the dissent in the Michigan Supreme Court, 513 N.W.2d at 791–97 (Brickley, J., dissenting).

**3.** We recognize that ordinarily lay jurors will depend upon expert testimony in order to explain the standard of care, how the defendant breached that standard, and how that breach caused injury to the client. *Rancho del Villacito Condominiums, Inc. v. Weisfeld,* 121 N.M. 52, 55–56, 908 P.2d 745, 748–49 (1995). To prevent juries in legal malpractice cases from being subjected to the legal equivalent of "junk science," we urge trial courts to exercise their gatekeeping function to insure that experts testifying in legal malprac-tice cases are qualified and that their testimony is not merely "subjective belief or unsupported speculation." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.05[1][a] (Jos. M. McLaughlin gen. ed., 2d ed.2002). It is the responsibility of trial courts to insure that the proffered expert testimony by legal experts "has a reliable basis in the knowledge and experience of [the relevant] discipline," *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (internal quotation marks and citation omitted; alteration in original), so that the testimony of such legal experts fairly can be said to "assist the trier of fact," Rule 11–702 NMRA 2003. If trial courts perform their gatekeeping function, we anticipate that there will be cases involving issues of

*Rancho del Villacito Condominiums, Inc. v. Weisfeld,* 121 N.M. 52, 56, 908 P.2d 745, 749 (1995) (observing that plaintiff could have called expert witnesses to establish that defendant attorney's advice to plaintiff as to legal implications of proposed course of conduct fell below the standard of care and resulted in damage to plaintiff).

{18} In the present case, the district court decided the issue of proximate cause by ruling as a matter of law that an appeal inevitably would have succeeded. In doing so, the district court usurped the jury's function as factfinder.

## 2. The Summary Judgment Must Be Reversed

{19} Plaintiff's theory of negligence, as alleged in her complaint, is that attorney Scarborough breached the applicable standard of care by not advising Plaintiff that Plaintiff had a community property interest in Stephen's PERA benefits and by failing to include a provision in the final decree awarding Plaintiff her share of those benefits. Defendants' motion for summary judgment was limited to the issue of proximate cause. Defendants did not attempt to pierce Plaintiff's allegations establishing Scarborough's negligence. Accordingly, we accept them as true for purposes of review. *Bartlett v. Mirabal,* 2000–NMCA–036, ¶ 17, 128 N.M. 830, 999 P.2d 1062 (discussing the movant's burden of making a prima facie case of no genuine issue of material fact). Because Defendants incorrectly assumed that proximate causation was a question of law for the district court, they did not support their motion for summary judgment with expert testimony establishing to a reasonable legal certainty that an appeal would have succeeded, nor did they argue that Plaintiff's expert's testimony was insufficient to create a genuine issue of material fact as to whether an appeal would have succeeded. Thus, they failed to make out a prima facie case of entitlement to summary judgment. *Knapp v. Fraternal Order of Eagles,* 106 N.M. 11, 13, 738 P.2d 129, 131 (Ct.App.1987)

first impression in which no reputable expert will be able to predict the outcome of a hypothetical

(reversing summary judgment; observing that movant failed to make out a prima facie case of entitlement to summary judgment and that therefore the burden of production never shifted to the nonmovant). We therefore reverse the grant of summary judgment in Defendants' favor.

## 3. The District Court Committed Substantive Error in Treating the Alleged Malpractice of Successor Counsel as "the" Proximate Cause

{20} In addition to its error in deciding the question of proximate cause as a question of law, the district court committed substantive error by ruling that malpractice by Plaintiff's successor attorneys would constitute "the" proximate cause of Plaintiff's loss and would necessarily prevent Scarborough's initial malpractice from being a proximate cause of the loss of Plaintiff's community share of PERA benefits.

{21} As noted above, Plaintiff alleges that Scarborough negligently failed to protect Plaintiff's community interest in Stephen's PERA benefits by failing to include in the final decree express language awarding Plaintiff her community share. If the jury finds that Scarborough was negligent, then, in determining whether Scarborough's negligence was a cause of the loss of Plaintiff's community share of PERA benefits, the jury will decide what would have happened if Scarborough had included in the 1986 final decree a provision awarding Plaintiff her community interest in the PERA benefits. We believe it is open to proof that had Scarborough included a provision expressly awarding Plaintiff her community share of Stephen's PERA benefits, there would have been no need to bring a Section 40–4–20 motion to divide the PERA benefits, the hearing before Judge Lang would not have occurred, and the question of appealing the April 15, 1998, order would not have arisen. Thus, a jury could find that Scarborough's negligence was a cause in fact of the loss of Plaintiff's share of benefits—*i.e.,* a factor "without which the [loss of PERA benefits]

appeal to a reasonable legal probability.

would not have occurred." UJI 13–305 NMRA 2003.

{22} Proximate cause superimposes considerations of foreseeability on causation in fact. *See Torres v. El Paso Elec. Co.*, 1999–NMSC–029, ¶ 14, 127 N.M. 729, 987 P.2d 386 (noting the necessity of limiting "potentially limitless liability arising from mere cause in fact"). New Mexico follows the rule that " '[a]ny harm which is in itself foreseeable, as to which the actor has created or increased the recognizable risk, is always "proximate," no matter how it is brought about.' " *Id.*, ¶ 23 (quoting Restatement (Second) of Torts § 442B cmt. b (1965)). Our Supreme Court has held that medical malpractice is a foreseeable consequence of negligent operation of a motor vehicle resulting in an injury to the plaintiff that requires medical treatment. *Lujan v. Healthsouth Rehab. Corp.*, 120 N.M. 422, 426, 902 P.2d 1025, 1029 (1995). If medical malpractice is a foreseeable consequence of negligent operation of a motor vehicle in a manner that results in physical injury to another, then, *a fortiori*, the alleged legal malpractice of Plaintiff's successor attorneys was a foreseeable consequence of Scarborough's negligence in preparing the decree. *See Collins v. Perrine*, 108 N.M. 714, 718, 778 P.2d 912, 916 (Ct.App.1989) (observing that "where the negligent conduct of an actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability").

{23} Under New Mexico law, there may be more than one proximate cause of an injury. *Torres*, 1999–NMSC–029, ¶ 16, 127 N.M. 729, 987 P.2d 386; UJI 13–305 (stating that a proximate cause need not be the only cause of an injury). Thus, a finding that the failure of Plaintiff and her successor attorneys to appeal from the April 15, 1998 order was a proximate cause of Plaintiff's loss does not foreclose a finding that Scarborough's negligence also was a proximate cause.

### 4. Unpreserved Arguments

{24} Plaintiff, citing *Stone v. Satriana*, 41 P.3d 705 (Colo.2002) (en banc), argues that it would be contrary to public policy to allow Defendants to base the defense of comparative negligence upon the acts of Plaintiff's successor attorneys. Plaintiff argues that malpractice defendants will use the defense of comparative negligence to disqualify successor attorneys and to intrude on the attorney-client privilege. Plaintiff points out that Defendants deposed Jones and Gilstrap and successfully moved to disqualify Gilstrap. Plaintiff also argues that the threat of a third-party claim by a malpractice defendant against the client's successor attorneys may interfere with zealous advocacy by the attorney bringing the malpractice action. *See Holland v. Thacher*, 199 Cal.App.3d 924, 245 Cal.Rptr. 247, 250–54 (1988).

{25} Plaintiff frankly concedes that these arguments were not preserved. Plaintiff argues that the question of whether an attorney sued for legal malpractice may base the defense of comparative fault on the alleged malpractice of successor attorneys presents a question of "general public interest." Rule 12–216(B)(1) NMRA 2003. We agree, and therefore address this question.

{26} "More is involved in pure comparative negligence than the removal of contributory negligence as a bar to recovery." *Bartlett v. N.M. Welding Supply, Inc.*, 98 N.M. 152, 155, 646 P.2d 579, 582 (Ct.App. 1982). Our system of pure comparative negligence is based on fairness to both plaintiffs *and defendants. Id.* We must apply several-liability/comparative fault principles unless their application would be inconsistent with public policy. *Reichert v. Atler*, 117 N.M. 623, 625, 875 P.2d 379, 381 (1994).

{27} While we agree that Plaintiff has raised legitimate concerns, we are not persuaded by the "throw out the baby with the bathwater" approach adopted by the Colorado Supreme Court. We think that it is possible to protect the rights of plaintiff-former clients without depriving defendant-attorneys of the defense of comparative fault. *See Parler & Wobber v. Miles & Stockbridge, P.C.*, 359 Md. 671, 756 A.2d 526 (2000) (allowing original counsel to assert a contribution claim against allegedly negligent successor counsel; rejecting the argument that by su-

ing former counsel for malpractice, the client puts the negligence of successor counsel at issue, thereby impliedly waiving the attorney-client privilege as to communications between the client and successor counsel). We therefore reject Plaintiff's request that we recognize a legal malpractice exception to the doctrine of comparative fault.

**CONCLUSION**

{28} The summary judgment in Defendants' favor is reversed and this matter is remanded to the district court for further proceedings consistent with this opinion.

{29} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge and RODERICK T. KENNEDY, Judge.