This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**ROLAND LUCERO and R & L STRAIGHTLINE TILE, LLC a/k/a R & L STRAIGHTLINE TILE,**

    Plaintiffs-Appellants,

v.                                                          **NO. 32,901**

**RICHARD SUTTEN,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Law Offices of Daymon B. Ely
Daymon B. Ely
Albuquerque, NM

William Gilstrap
Albuquerque, NM

for Appellants

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** Roland Lucero and his company, R & L Straightline Tile, (collectively, Plaintiff) appeal from a judgment entered in favor of Defendant Richard Sutten following a bench trial on the issue of legal malpractice. The district court found that Defendant negligently failed to apprise Plaintiff of the dangers of providing an unsecured $300,000 loan to a Las Vegas development company. However, the district court applied the doctrine of independent intervening cause, a defense that had not been previously raised in Defendant's proposed findings prior to trial, and concluded that the real estate market collapse of the mid-to-late 2000s severed the connection between Defendant's professional negligence and Plaintiff's damages claimed therefrom. On appeal, Plaintiff argues that the district court erred in applying the doctrine of independent intervening cause to these facts. We agree. We reverse and remand for consideration of damages in light of this Opinion.

**BACKGROUND**

**{2}** The district court's following findings of fact in this case are not challenged on appeal. Plaintiff was able to amass substantial savings in the course of his business in

the tile industry. In February 2008, Plaintiff was approached by Mark Brady, an old friend, about loaning $300,000 to a developer for a mixed-use real estate development project in Las Vegas, Nevada. By the terms of the proposed "bridge loan," Plaintiff was to receive a $360,000 payment one month after making the loan. Brady, who was also the friend of an officer of the development company, stood to receive a "finder's fee" of up to $30,000 for assisting in the transaction. These terms were contained in a document entitled "Secured Promissory Note," which was forwarded to Brady by the developer.

{3}      Brady suggested to Plaintiff that Defendant, a licensed attorney, review the document on Plaintiff's behalf. Defendant reviewed and made minor changes to the document without notifying Plaintiff that the purported "Secured Promissory Note" (the Note) did not, in fact, create any security interest. Nor did Defendant apprise Plaintiff of any of the inherent risks involved in engaging in such a transaction. Instead, Defendant returned the Note with his edits to Brady but did not communicate directly with Plaintiff. Shortly after making the loan, the real estate market in Las Vegas, Nevada, suffered a "cataclysmic decline," and the Las Vegas developer filed for bankruptcy. Plaintiff was never repaid any portion of the loan he had made because the senior lienholder's interests exceeded the value of the secured property after the market collapse.

{4} Plaintiff sued Defendant for professional malpractice, and the district court held a bench trial on the merits. The district court found that the parties had entered into an attorney-client relationship and that Defendant's actions fell below the standard of care and were negligent because he failed to adequately review the Note or advise Plaintiff about the nature and dangers of the proposed transaction. Nevertheless, the district court found that the decline in the Las Vegas real estate market operated as an independent intervening cause, severing the connection between Defendant's professional negligence and Plaintiff's losses. This appeal followed.

**DISCUSSION**

**Standard of Review**

{5} At the outset, the parties disagree about the standard of review we should apply in this case. Plaintiff contends that this matter should be reviewed de novo, while Defendant argues that Plaintiff "gets off on the wrong foot with the standard of review" and that we should instead determine whether the factual issues are supported by substantial evidence. We agree with Plaintiff. While the determination of whether something is an independent intervening cause is a question of fact, *Govich v. North American Systems, Inc.*, 1991-NMSC-061, ¶ 24, 112 N.M. 226, 814 P.2d 94, this appeal, involving undisputed facts, presents a question of law: whether the doctrine of independent intervening cause should have even been considered by the fact finder in the first place. We have previously reviewed this issue de novo in cases tried by

juries, *see, e.g.*, *Chamberland v. Roswell Osteopathic Clinic, Inc.*, 2001-NMCA-045, ¶ 11, 130 N.M. 532, 27 P.3d 1019, and we see no reason to afford a more deferential review when the fact finding is conducted by a judge. *Johnson v. Yates Petroleum Corp.*, 1999-NMCA-066, ¶ 3, 127 N.M. 355, 981 P.2d 288 (stating that when the relevant facts are undisputed, the legal interpretation of those facts is reviewed de novo on appeal). We therefore review the district court's decision to apply the doctrine of independent intervening cause de novo.

**The Doctrine of Independent Intervening Cause Should Not Have Been Considered by the Fact Finder**

{6}     Plaintiff makes two arguments on appeal: (1) that the district court incorrectly applied the doctrine of independent intervening cause and (2) that the district court's decision creates immunity for a person or entities whose negligence caused harm. Because our reversal is based on the issue of the independent intervening cause, we need not reach Plaintiff's second argument. Before turning to our analysis, however, we note again one curious aspect of the district court's decision. Our review of the record indicates that Defendant did not raise the doctrine of independent intervening cause in his pre-trial findings and conclusions or during the trial, including during closing argument. It was only after the district court raised the doctrine sua sponte in his letter decision that Defendant added to his post-trial findings and conclusions that the "market collapse was an independent intervening force" that severed the

connection between Defendant's negligence and Plaintiff's losses. Accordingly, the doctrine, which then became part of the district court's findings and conclusions, was never properly raised by Defendant or argued by the parties below. *See Chamberland*, 2001-NMCA-045, ¶ 25 (noting that it was the defendant's duty to request an instruction and present the issue of independent intervening cause to the jury). Notwithstanding the lack of a fully developed record on the issue, we proceed to address the district court's ruling.

**{7}** "The elements of legal malpractice are: (1) the employment of the defendant attorney; (2) the defendant attorney's neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the client." *Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 8, 310 P.3d 611 (alteration, internal quotation marks, and citation omitted). At trial, the district court found that the first two elements of representation and negligence were met, but it concluded that the collapse of the real estate market in Las Vegas, Nevada, constituted an independent intervening cause, severing Defendant's negligence from Plaintiff's losses. As a result, the sole issue before this Court is the third element, proximate cause. *See Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 17, 127 N.M. 729, 987 P.2d 386 ("A finding of an independent intervening cause represents a finding against the plaintiff on proximate cause[.]"), *overruled on other grounds by Herrera v. Quality Pontiac*, 2013-NMSC-018, 134 N.M. 43, 73 P.3d 181.

6

**{8}** "An independent intervening cause is a cause which interrupts the natural sequence of events, turns aside their cause, prevents the natural and probable results of the original act or omission, and produces a different result, that could not have been reasonably foreseen." *Id.* ¶ 12 (internal quotation marks and citation omitted). In *Torres*, our Supreme Court recognized that the doctrine is incompatible with our system of comparative negligence and potentially in conflict with our use of several liability. *See id.* ¶¶ 18-19. Thus, our appellate courts have "virtually eliminated" the doctrine's application in cases involving only negligent, as opposed to intentional, conduct. *Silva v. Lovelace Health Sys., Inc.*, 2014-NMCA-086, ¶ 14, 331 P.3d 958, *cert. granted*, 2014-NMCERT-008, ___ P.3d ___ (No. 34,784, Aug. 1, 2014). While the defense may still be available in limited cases, for example where the alleged intervening cause is a "force of nature"—the sort of event that "cannot be prevented by human care, skill or foresight"—*Chamberland*, 2001-NMCA-045, ¶ 24 (internal quotation marks and citation omitted), for the reasons discussed below, we find it unnecessary to decide whether "market decline" constitutes a force of nature in this case.

**{9}** When the intervening cause does not involve intentional conduct, New Mexico follows the rule that "any harm which is in itself foreseeable, as to which the actor has created or increased the recognizable risk, is always proximate, no matter how it is brought about." *Andrews v. Saylor*, 2003-NMCA-132, ¶ 22, 134 N.M. 545, 80 P.3d

7

482 (alteration, internal quotation marks, and citation omitted). Thus, the doctrine is inapplicable in New Mexico in cases where a non-intentional intervening force causes the same harm as that risked by the actor's conduct. *See Collins ex rel. Collins v. Perrine*, 1989-NMCA-046, ¶ 19, 108 N.M. 714, 778 P.2d 912 ("An independent intervening cause is a cause that interrupts the natural sequence of events and produces a *different* result that could not be reasonably foreseen."). The principle cited in *Andrews*, *Torres*, and *Collins* is adopted from the Restatement (Second) of Torts, which applies equally to forces of nature:

> If the actor's conduct has created or increased the risk that a particular harm to the plaintiff will occur, . . . it is immaterial to the actor's liability that the harm is brought about in a manner which no one in his position could possibly have been expected to foresee or anticipate. This is true not only where the result is produced by the direct operation of the actor's conduct upon conditions or circumstances existing at the time, but also where it is brought about through the intervention of other forces which the actor could not have expected, *whether they be forces of nature*, or the actions of animals, or those of third persons which are not intentionally tortious or criminal.

Section 442B cmt. b (1965) (emphasis added).

{10}     Our application of Restatement (Second) of Torts Section 442B to an allegedly intervening force in the legal malpractice context of *Collins* is instructive. In *Collins*, the defendant-attorney negligently settled a complex medical malpractice case without performing a minimum level of discovery. 1989-NMCA-046, ¶ 13. After settling with the original defendants, the plaintiffs sued Indian Health Services (IHS) in federal

8

court and obtained a much larger judgment, with damages apportioned between IHS and the original defendants. *Id.* ¶ 8. Despite the previous settlement with the original defendants, the plaintiffs' attorney planned on collecting all damages from IHS through principles of joint and several liability. *Id.* ¶ 16. However, while the second suit was pending, New Mexico abolished the concept of joint and several liability. *Id.* ¶ 17. Thus, as a result of the attorney's negligence in settling the original case, together with the change in state tort law, the plaintiffs were unable to collect a substantial portion of the damages awarded in the federal judgment. *Id.* ¶ 8.

{11}    At trial for legal malpractice and on appeal, the defendant-attorney in *Collins* argued that the unforeseeable change in the law acted as an independent intervening cause. *Id.* ¶¶ 16-18. This Court rejected that argument, stating:

> The Restatement of Torts addresses this point clearly. In Section 442B, the Restatement explains that where the negligent conduct of an actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability.

*Collins*, 1989-NMCA-046, ¶ 20. Applying Restatement (Second) of Torts Section 442B, we reasoned that the attorney's negligence created a particular risk—the risk that the plaintiffs would not be able to recover damages caused by the original defendants. We therefore held that the "intervention of the change in law," whether

foreseeable or not, brought about a foreseeable harm and could not relieve the attorney of liability. *Collins*, 1989-NMCA-046, ¶¶ 20-21.

{12}   In light of these authorities, the district court should not have considered the doctrine of independent intervening cause in this case. The district court found that Defendant gave the transaction the attorney "seal of approval," negligently creating or increasing the risk of the loss of Plaintiff's investment by failing to warn Plaintiff of the dangers inherent in loaning $300,000 to a Las Vegas developer in an unsecured transaction. In the absence of any allegation that the intervening cause was the result of intentional tortious conduct, the principles articulated in Restatment (Second) of Torts Section 442B and adopted in *Collins* apply. As discussed above, these principles apply whether or not the market decline is considered a "force of nature." The district court should not have dismissed this case but, instead, it should have determined whether Defendant's negligence was the proximate cause of loss of Plaintiff and, if applicable, employed a standard comparative fault analysis.

{13}   Citing to several out-of-state and federal cases, Defendant asks us to consider whether the collapse of the Las Vegas real estate market was foreseeable. However, Defendant's characterization of the issue relies on the same contention that we specifically rejected in *Collins*: that the manner in which the harm occurs is somehow relevant to the analysis. *See Collins*, 1989-NMCA-046, ¶¶ 17-21. We have made clear that in cases not involving intentional intervening conduct, even when the risk of harm

10

is foreseeable, the manner that the foreseeable harm is brought about need not itself be foreseeable. *Id.* ¶ 21 ("Nor does it matter whether [the attorney] could have foreseen the change in law."). Accordingly, we find Defendant's citations to extra-jurisdictional opinions evaluating the foreseeability of the 2008 real estate market collapse inapposite. We conclude that the district court erred in applying the doctrine of independent intervening cause to its factual determination that the parties had entered into an attorney-client relationship and that Plaintiff made the loan in reliance, at least partially, on Defendant's seal of approval.

**CONCLUSION**

{14}     We reverse the district court's decision dismissing Plaintiff's complaint with prejudice and remand for consideration and apportionment of damages using a comparative fault analysis.

{15}     **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

11

**MICHAEL D. BUSTAMANTE, Judge**

_____
**J. MILES HANISEE, Judge**