### 10486

### MARLBORO COTTON MILLS v. O'NEAL.

#### (103 S. E. 781.)

1. APPEAL AND ERROR—DISMISSAL AND NONSUIT—NONSUIT, INEVITABLE CONSEQUENCES OF ADVERSE RULING, INVOLUNTARY AND APPEALABLE.— Where nonsuit was the inevitable consequence of ruling adverse to plaintiff's contention that the execution of the contract sued on was admitted by defendant's answer, it was involuntary, and plaintiff can appeal therefrom.

2. SALES—ANSWER DID NOT PUT IN ISSUE EXECUTION OF CONTRACT.—
   In an action for breach of contract for sale of cotton for future
   delivery, answer admitting execution of a contract of similar nature
   and tenor to the copy attached to the complaint, questioning only
   whether the copy attached was correct, *held* not to put in issue
   the execution of the contract, but merely the correctness of the copy.

3. PLEADING—CONSTRUCTION OF ANSWER BY PARTIES CONTROLS.—In an
   action for breach of contract for sale of cotton for future delivery,
   where both parties construed the answer on trial as intended to raise
   the issue of execution of the contract, the trial Court did not err in
   requiring plaintiff to prove it.

4. FRAUDS, STATUTE OF—PAROL TESTIMONY ADMISSIBLE TO PROVE AUTHOR-
   ITY OF AGENT TO SIGN CONTRCT.—In an action for breach of contract
   for sale of cotton for future delivery, parol testimony was admissi-
   ble to prove that the agent who signed the contract had authority
   to sign the name of his principal, plaintiff's assignor, to the contract,
   required by the statute of frauds, to be in writing.

5. FRAUDS, STATUTE OF—PAROL TESTIMONY ADMISSIBLE TO SHOW AUTHOR-
   ITY OF AGENT WHO EXECUTED CONTRACT FOR FUTURE DELIVERY OF
   COTTON.—Civ. Code 1912, sec. 3421, making contracts for the future
   delivery of cotton, etc., void unless both parties *bona fide* intend a
   delivery, does not render inadmissible parol testimony that the con-
   tract for sale of cotton for future delivery involved in litigation was
   executed by plaintiff's assignor through an agent who was author-
   ized.

Before MOORE, J., Marlboro, Spring term, 1919. Re-
versed.

Action by Marlboro Cotton Mills against J. R. O'Neal
for delivery of cotton under contract. From order of non-
suit, the plaintiff appeals.

*Messrs. D. D. McColl* and *W. M. Stevenson,* for appel-
lant, cite: *Plaintiff was forced to submit to nonsuit under
ruling of the presiding Judge, and it was not voluntary so
as to deprive plaintiff of the right of appeal:* 59 S. C. 218;
97 S. C. 360. *Where principal assumes a contract made by
an agent, a third party cannot question authority of such
agent:* 1 A. & E. Enc. Law 1180. *No statutory require-
ments as to manner in which the authority of the agent must
be shown:* A. & E. Enc. Law "Agency." *And may be*

*shown by acts of agent and surrounding circumstances:* 49 S. C. 345.   *Method of proving agency:* 86 S. C. 8; 79 S. C. 578; 85 S. C. 26; 80 S. C. 207.

*Messrs. Townsend & Rodgers,* for respondent.   Oral argument.

July 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This is an action for damages for breach of a contract for the sale of cotton for future delivery.   Plaintiff alleges that on March 2, 1916, defendant and C. E. Exum entered into a contract in writing, whereby defendant agreed to sell Exum 50 bales of cotton, to be delivered on or before was a cotton buyer.   On his examination, he said that Exum assigned the contract to plaintiff for value a few days after its execution; that plaintiff duly notified defendant of the assignment, and that plaintiff would receive and pay for the cotton, and expected defendant to deliver it according to the contract; that it was the *bona fide* intention of Exum and defendant, at the time of making the contract, to receive and deliver the cotton in kind, and plaintiff had the like intention when it took the assignment of the contract.   An alleged copy of the contract was attached to the complaint as an exhibit.

In his answer defendant denies "each and every allegation of the complaint not herein admitted."   He then admits "so much of paragraph 2 as alleges that defendant and C. E. Exum entered into a contract of similar nature and tenor to the copy attached to the complaint, but he does not know whether said copy is a true and correct copy or not." He then goes on to set forth other defenses which need not be stated.

At the trial plaintiff put up C. A. Easterling, the witness to the contract, to prove its execution. Easterling had been an employee—perhaps a clerk—in the office of Exum, who was a cotton buyer. On his examination, he said that Exum did not sign the contract with his own hand, but that he (Easterling) signed Exum's name to it. Plaintiff then offered to prove by Easterling, and also by Exum, that Easterling had authority to sign Exum's name to the contract. But the Court excluded the testimony, holding that, where the law requires a contract to be in writing, the authority of an agent to execute it must also be in writing. Plaintiff then took the position that the execution of the contract was admitted by defendant's answer; but the Court ruled otherwise, and, in these circumstances, plaintiff asked to be allowed to take a nonsuit, which was ordered, and plaintiff appealed.

Defendant moved this Court to dismiss the appeal, on the ground that a party cannot appeal from an order granted on his own motion. The motion was refused, on the ground that the nonsuit, although asked for by plaintiff, was not voluntary in the sense in which that word is used, when it is said that a voluntary order of nonsuit is not appealable. A nonsuit was the inevitable consequence of a ruling adverse to plaintiff's contention, and by that circumstance it was made involuntary. *American Publishing Co. v. Gibbes,* 59 S. C. 215, 37 S. E. 753; *Phosphate Co. v. Arthurs,* 97 S. C. 398, 81 S. E. 663.

The answer is hardly sufficient to put in issue the execution of the contract. It admits the execution of a contract "of similar nature and tenor to the copy attached to the complaint," and questions only whether the copy attached is correct. There was no intimation or suggestion that more than one contract between these parties had been executed; hence, fairly construed, the answer did not put in issue the execution of the contract, but merely

the correctness of the copy attached to the complaint, which could be determined by comparison with the original.

But, although we think that on proper construction of the answer, it did not put in issue the execution of the contract, we are not prepared to hold that his Honor erred in requiring plaintiff to prove it, because it is apparent from the record, showing what took place at the trial, that both parties construed the answer as intending to raise that issue. Plaintiff's attorney evidently so construed it, because he came to trial prepared to prove the fact, and actually undertook to do so; and it was not until he had failed to do so on account of the exclusion of the testimony offered, that he fell back on the position that the fact had been admitted. It is equally clear, from the statements made by defendant's attorney at the trial, that he, too, construed the answer as being sufficient to raise that issue. Consequently, even if the Court had construed the answer (as we do) as being insufficient for that purpose, under the circumstances, it would have allowed defendant to amend his answer, so as to make the issue, as it clearly appeared that plaintiff would not have been taken by surprise, seeing that it expected and came prepared to meet that issue. It follows that appellant can gain nothing on account of the ruling complained of.

But there was prejudicial error in excluding parol testimony to prove that Easterling had authority to sign Exum's name to the contract. In some jurisdictions the rule is as stated by his Honor; but we are informed by text-book authorities that, in most of those States, the statute of frauds expressly requires that such contracts be signed by the party to be charged, or by his agent thereunto lawfully authorized in writing, and, unless the statute does so require, the Courts generally hold verbal authority sufficient. 20 Cyc. 276. The rule is thus stated in 2 C. J. 450:

"It is generally held that oral authority is sufficient to enable an agent to execute a written contract or memorandum, as required by the statute of frauds for the sale or purchase of personal property."

It has been suggested that, as the statute against gambling contracts (section 3421, vol. I, Civil Code) makes contracts for future delivery of certain commodities (including cotton) void, unless it is *bona fide* intention of both parties thereto, at the time of the making thereof, that the commodity contracted for shall actually be delivered and received in kind, at the future time therein specified, such contracts cannot be executed by an agent, unless the principal be present at the time of the making thereof, because the principal must have the requisite intention at that time; and in this case there was no testimony tending to prove that Exum was present when Easterling signed his name to the contract, or, indeed, that Exum even knew of the making of the contract until afterwards.

The answer to this is twofold: In the first place, the Court excluded all parol testimony tending to prove the execution of the contract, or the circumstances of its execution, holding that Easterling's authority could be shown only by writing. If the testimony offered had been admitted, it might be shown that Exum was actually present and directed Easterling to sign his name to the contract. In the second place, we are not impressed with the view that the actual presence of the principal at the moment of making or executing the contract is necessary to the existence of the required intention. That construction of the statute is too narrow. Let us illustrate: Suppose Exum had met defendant on the street, and they had agreed upon all terms of the contract, both having the required intention, and then Exum had sent defendant to his office to have the contract reduced to writing and executed; we see no reason why such a contract would not be valid. We do not mean to restrict the

validity of such contracts to the precise circumstances stated, for we see no reason why the required intention may not exist in various other circumstances which may arise or be suggested. Such contracts are frequently made where buyer and seller reside in different States, and they are frequently made through the agency of brokers; and yet the *bona fide* intention to receive and deliver the goods in kind may exist, although the parties are widely separated, and contract through an intermediary.

It is clear, therefore, that testimony tending to prove merely the execution of the contract does not touch the issue as to the intention of the parties as to the actual delivery and acceptance of the goods contracted for, which is made by the statute a prerequisite to its validity, because the required intention may exist, even though one or both of the parties execute the contract by an agent, and it may not exist when both execute it in person. If it does exist at the time of making the contract, the statute is satisfied, and whether it does or not is a question of fact for a jury to decide upon all the evidence.

Judgment reversed.