UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

RAYMOND L. KYSAR; PATSY SUE
KYSAR; KYSAR FAMILY TRUST,

Plaintiffs - Appellants,

v.

AMOCO PRODUCTION COMPANY,

Defendant - Appellee.

No. 01-2359

NEW MEXICO FARM AND
LIVESTOCK BUREAU,

Amicus Curiae.

ORDER
Filed August 30, 2004

Before **HENRY**, **PORFILIO**, and **BRISCOE**, Circuit Judges.

The "Kysars' Petition for Limited Correction or Rehearing" is granted in part and denied in part. The opinion is amended on page 6, line eleven to read, "In exchange for the right of way, the Kysars receive a 2.5% overriding royalty . . . ." The substituted opinion reflecting this change is attached.

The suggestion for the change on page 15 of the opinion is denied.

<div style="margin-left:50%">

Entered for the Court
Patrick Fisher, Clerk of Court

By:
    Amy Frazier
    Deputy Clerk

</div>

2

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**JUL 26 2004**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

**PATRICK FISHER**

**Clerk**

RAYMOND L. KYSAR; PATSY SUE
KYSAR; KYSAR FAMILY TRUST,

 Plaintiffs-Appellants,

 v.

AMOCO PRODUCTION COMPANY,

 Defendant-Appellee.

 No. 01-2359

————

NEW MEXICO FARM AND
LIVESTOCK BUREAU,

 Amicus Curiae.

————

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO
(D.C. NO. CIV-00-958 LFG/KBM)**

————

Victor R. Marshall, Victor R. Marshall & Associates, Albuquerque, New Mexico,
for Plaintiffs-Appellants.

Tanya M. Trujillo (Bradford C. Berge with her on the briefs), Holland & Hart,
LLP, Santa Fe, New Mexico, for Defendant-Appellee.

Lee E. Peters, Hubert & Hernandez, P.A., Las Cruces, New Mexico, for Amicus
Curiae New Mexico Farm & Livestock Bureau.

Before **HENRY, PORFILIO,** and **BRISCOE,** Circuit Judges.

**HENRY** , Circuit Judge.

This case arises from a dispute over access to a gas well.  The Kysar family owns a ranch on the Animas River in San Juan County, New Mexico.  Amoco is the lessee under various leases of mineral estates under the Kysars' ranch as well as to lands owned by the Bureau of Land Management (BLM), adjacent to and just north of the Kysars' property.  Several oil and gas wells drilled and operated by Amoco are on these properties.  This litigation centers around one Amoco well, the Sullivan Gas Com E Well (the "Sullivan E well" or "the well").  *See* attached schematic (Att. 1).   The well is located on BLM land that is part of a unit that also includes minerals under the Kysars' surface estate.  Both the BLM land and a portion of the Kysars' land are subject to a 1992 joint development agreement with the federal government.  The Kysars filed this tort action against Amoco in New Mexico state court. Amoco removed the case to federal court pursuant to 28 U.S.C. §§ 1331 and 1441(b).  The Kysars' complaint alleges that Amoco's use of the Kysars' roads in order to operate and service the Sullivan E well constituted unlawful trespass and unfair trade practices under New Mexico law.  The Kysars also raise an unjust enrichment claim.  The Kysars did not seek

2

certification to the New Mexico courts to resolve this issue of state law. We certified two questions of state law to the New Mexico Supreme Court. Those question have been answered, and, exercising our jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's order in part, reverse in part, and remand for further proceedings.

## I. FACTUAL BACKGROUND

The facts of this case are not in dispute. The lawsuit concerns Amoco's access to the Sullivan E well, which is part of the "Fruitland" coal formation, one of many geologic mineral formations underlying both the Kysars' land and the BLM land. The Sullivan E well is located on a tract of BLM land, in Section 22, adjacent to the Kysars' ranch.

The Kysars purchased the ranch in 1983, subject to a reservation of previously leased oil, gas and other minerals, "[w]ith right of ingress and egress for removal of the same." Aplts' App. 158 (Warranty deed, dated May 14, 1956). In addition, the conveyance was subject to all easements of record for pipe and pipe lines, roads and rights of way passage and other easements. *See id.* The conveyance was also subject to a right-of-way granted in 1954 to the Southern Union Gas Company for the purpose of constructing a road to and from Southern Union's "contemplated well location." Aplts' App. at 41 (Right-of-Way Grant, dated May 10, 1954).

3

Amoco is the successor-in-interest to the mineral rights underlying the Kysars' ranch and the BLM land. Amoco's mineral rights under the Kysars' ranch are dictated under two substantively identical leases: the Keys lease that governs 344 northern acres of the Kysars' ranch, and the Jaquez lease that covers the remaining southern portion of the ranch (which cover all of Section 27 and portions of Sections 28, 33, and 34).

The Keys and Jaquez leases were signed in 1948. In 1953, the Keys and Jaquez leases were amended to provide that the mineral rights lessee (i.e., Amoco's predecessor-in-interest), at its option, and without the surface owners' "joinder or further consent," could pool and unitize the leasehold estate with any other land or lease covering adjacent lands. Aplts' App. at 39 (Amendment to Oil and Gas Lease, dated June 10, 1953); *see also* Supl. App. at 10 (Amendment to Oil and Gas Lease, dated June 15, 1953) (same).

Specifically, the amendments gave the mineral rights lessee:

> the power and right, at any time during the term of this lease, as to all or any part of the land . . . and as to any one or more of the formations thereunder and the oil, gas, and all by-products therein or produced therefrom, at its option and without Lessor's joinder or further consent, to pool and unitize the leasehold estate and the Lessor's royalty estate created by this lease with the rights of any third parties in all or any part of the land . . . and with any other land, lands, lease, leases, oil, gas, and all by-products therein and royalty rights, or any of them, adjacent, adjoining or located within the immediate vicinity of the land covered by this lease, whether owned

4

> by Lessee or some other person . . . so as to create by such pooling and unitization, one or more drilling or production units. Each such drilling or production unit shall not exceed 320 acres.

Aplts' App. at 39; Supl. App. at 10 (same). In the amendment, the parties also

> agreed that the commencement, drilling, completion of or production from a well, on any portion of a unit created hereunder, shall not have the effect of continuing this lease in force insofar as it covers the land not included within such unit, and no unit shall be created which covers and includes land in more than one Section.

Aplts' App. at 39; Supl. App. at 10 (same). Amoco, as the successor to the rights of the original mineral lessee, retains these rights.

In 1992, Amoco entered into a communitization agreement that committed 36.84 acres in Section 22 that Amoco held under the amended Keys lease to a joint development project with several other tracts of land. As the attached schematic indicates, the 36.84 acres of Section 22 constitute a relatively small segment of the Kysars' ranch. The communitization agreement covered the Fruitland coal gas seam geologic formation underlying the specified tracts. Pursuant to 30 U.S.C. § 226(j), the federal government approved the communitization agreement with Amoco and the other signatories.

In considering where to locate the Sullivan E well, Amoco approached the Kysars about placing the well within the boundaries of the 36.84 acres of the Kysars' ranch that are subject to the communitization agreement. None of the six

5

wells on the Kysars' ranch are on the communitized property. After the Kysars indicated that they did not want the Sullivan E well on their land (because it would hinder their cultivation of alfalfa), Amoco drilled the well on BLM land.

Two private roads access the Sullivan E well: (1) the north branch or bridge road, extending through Sections 27 and 28, which crosses the Kysars' property held under the amended Keys lease and includes a suspension bridge ("bridge road") and (2) the longer branch road, extending through Sections 27 and 34, which crosses both Keys and Jaquez lease property ("back gate road"). Amoco acceded to a request by the Kysars that Amoco not use the bridge road, based on the Kysars' fear that the bridge could not sustain heavy equipment. Amoco maintains that although it has thus far been able to limit itself to using the less convenient back gate road, it nevertheless has the right to use both roads to access the Sullivan E well.

In 2000, the Kysars negotiated a right of way with Coleman Oil, another oil company, that planned to drill a well on BLM lands within the communitized unit. In exchange for the right of way, the Kysars receive a 2.5% overriding royalty on all production from the new well, plus various payments for improvements and maintenance on the roads.

## II. THE DISTRICT COURT'S FINDINGS

Before the district court, the Kysars argued that (1) the communitization

does not authorize Amoco to cross the portion of their ranch contained within the communitized area to access the Sullivan E gas well on the adjacent BLM land (Section 22); (2) Amoco is not entitled to cross the non-communitized portion of the Kysars' ranch via the bridge road (sections 27 and 28); and (3) Amoco is not authorized to cross the southern portion of the Kysars' ranch via the back gate road (sections 34 and 27). The district court rejected each of these arguments.

First, the district court determined that the communitization agreement granted Amoco the right to access the Sullivan E well by crossing that portion of the Kysars' surface estate overlying the communitized formations. The district court concluded that, by virtue of the oil and gas leases and the later communitization agreement, a mineral rights lessee could use the surface area of the lease to access and develop a well located on a nearby tract owned by others even where the lease did not expressly grant this right. The district court determined that the communitization agreement affected "'both the *lands* described as being committed to the communitization area and each *lease* committed to the agreement.'" Aplts' App. at 236 (quoting *Wolff v. Belco Dev. Corp.,* 736 P.2d 730, 733 (Wyo. 1987) (emphasis in original)). "If production anywhere in a unit is considered to be production from each tract, then each surface tract within a unit is subject to the right of reasonable ingress and egress by lessees . . . [to] extract[] minerals from the unit." *Id.* at 234. Second, the

7

district court also determined that Amoco is entitled to use both the bridge road and back gate road for its access to wells on the Kysars' ranch and for access to the Sullivan E well. The court found that because the "communitization agreement . . . 'modifies and changes' the Keys lease," *id.* at 238, access should be unrestricted. The court continued, "'if any acreage within [a] lease is unitized with a producing well, the surface of the leased tract may be used to transport production from the unit well.'" *Id.* at 236 (quoting *Acree v. Shell Oil Co.*, 548 F. Supp. 1150, 1154 (M.D. La. 1982), *aff'd*, 721 F.2d 524 (5th Cir. 1983)).

The district court recognized that the lease at issue in *Acree* specifically provided for access to the surface lands not covered by a unitization agreement, and that the Keys lease and the 1953 amendment lacked any language regarding transport over non-unitized or unitized surfaces of the lease. However, the district court stated that even with the omission of specific language, "the result should nevertheless be the same." *Id.* The court noted that "[t]his right is, as always, subject to Amoco's duty of reasonable and non-negligent surface use, so that any danger to the bridge would have to be taken into account." *Id.* at 241 n.2. In making this finding, the court relied on *Amoco Production Co. v. Carter Farms Co.*, 703 P.2d 894 (N.M. 1985), which held that "the mineral lessee[] is entitled to use as much of the surface area as is reasonably necessary for its drilling and production operations." *Id.* at 896.

8

Next, the court reasoned that the back gate road, which crossed land governed by the Jaquez lease, was also available for access by Amoco. Having found no errors in Amoco's access and use of the Kysars' land, the district court rejected the Kysars' allegations involving state tort claims for trespass, unjust enrichment, and a violation of the New Mexico Unfair Trade Practices Act.

### III. ISSUES ON APPEAL

On appeal, the Kysars argue that the district court misconstrued and misapplied New Mexico law when it drew the above conclusions. Specifically, they contend that (1) the communitization agreement did not expand Amoco's rights to allow Amoco to access the surface of the communitized portion of the Kysars' ranch to develop the well; (2) the communitization agreement did not expand Amoco's rights to allow Amoco to access the surface of the non-communitized Kysars' ranch to develop the well; and (3) New Mexico law does not liberally construe implied easements.

We certified the following questions to, and received the following answers from, the New Mexico Supreme Court:

> (1) Under New Mexico law, does a mineral rights lessee, by virtue of a Communitization Agreement to which the mineral rights lessee is a party, gain a right of access over the surface estate of the unitized portion of the leased area in connection with the operations on other premises or lands pooled or unitized therewith where the lease did not expressly grant this right?
>
> The New Mexico Supreme Court construed the question to read:

9

(1) [W]hether, as a result of the 1992 Communization Agreement, Amoco has the right to use the surface of the Kysars' property located within Section 22 to reach the Sullivan E Well.

In response, the New Mexico Supreme Court

conclude[d] that under New Mexico law a mineral rights lessee, having entered into a communitization agreement with the permission of the prior fee owner, enjoys a right of access over the surface estate of the portion of the leased area subject to the agreement. Thus, we answer the first question "Yes."

*Kysar v. Amoco Prod. Co.*, No. 28,231 at 1 (N.M. June 15, 2004).

Our second certified question asked:

(2) Under New Mexico law, does a mineral rights lessee, by virtue of a Communitization Agreement to which the mineral rights lessee is a party, gain a right of access over the surface estate of the non-unitized portion of the leased area in connection with the production and extraction of minerals on other premises or lands pooled or unitized therewith where the lease did not expressly grant this right?

The New Mexico Supreme Court reformulated the second question to ask:

(2) [W]hether, as a result of the 1992 Communitization Agreement, Amoco has the right to use the surface of the Kysars' property acquired from Keys and located within Sections 27 and 28 to reach the Sullivan E well.

*See* N.M. Stat. Ann. § 39-7-7(A)(3). In response to the second question, the Court

conclude[d] that under New Mexico law a mineral rights lessee does not, by virtue of having entered into a communitization agreement with the permission of the prior fee owner, enjoy a right of access over the surface estate of the portion of the leased area that is not subject to the agreement. Thus, we answer the second question "No."

*Id.* at 2.

10

**A. Standard of Review**

"We review the district court's grant of summary judgment *de novo*, applying the same legal standards used by that court. Summary judgment should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law." *Blackhawk-Central City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1187-88 (10th Cir. 2000). "When, as here, a federal court is exercising diversity jurisdiction, it must apply the substantive law of the forum state," here, New Mexico. *Id.* at 1188. We review the district court's determination of New Mexico law de novo. *See id.*

**B. Access of the Surface of the Communitized Portion of the Kysars' Ranch to Develop the Well**

In light of the New Mexico Supreme Court's answers to the above questions, it is clear that the district court was correct that Amoco may have reasonable access to the surface of the 36.84 acre portion of the Kysars' ranch that is committed to the communitization agreement. The Court held:

> that under New Mexico law a mineral lessee's implied surface right of reasonable ingress and egress to reach a well located inside the production unit that the lessee is operating pursuant to a pooling arrangement extends across lease boundaries within the unit to the surface of the entire area subject to the arrangement, regardless of where within the unit production is taking place.

*Kysar*, No. 28,231 at 2o.

11

**C. Access of the Surface of the Non-Communitized Portion of the Kysars' Ranch in Sections 27 and 28 Governed by the Keys Lease**

It is also clear that the district court's conclusion that the communitization agreement had the effect of binding the entire Kysars' ranch to the agreement for purposes of reasonable surface access was in error. The Court

> conclude[d] that the 1992 Communitization Agreement did not modify the 1953 lease amendment. . . . Amoco does not enjoy an implied right of access by virtue of the communitization agreement over the portion of the Kysars ranch acquired from Keys within Sections 27 and 28.

*Id.* at 27-28. The Court continued: "Amoco is not entitled by virtue of [the 1992 Communitization Agreement] to use the Bridge Road or the portions of the Back Gate Road that cross the land the Kysars obtained from Keys to access the Sullivan E Well." *Id.* at 28. Having received the New Mexico Supreme Court's thorough and detailed analysis of the above questions, we need not address the Kysars' arguments regarding New Mexico's construction of implied easements as applied to these sections.

**D. Access of the Surface of the Non-Communitized Portion of the Kysars' Ranch Acquired under the Amended Jaquez Lease**

The New Mexico Supreme Court's reformulation of the second certified question did not directly consider "Amoco's right to use those portions of the Back Gate Road that cross the surface of the Kysars' property acquired from

Jaquez." *Id.* at 8.[1]  This question seemingly does not need to be answered, as it would be impossible to access the Sullivan E well through the property governed by the amended Jaquez lease without also traversing the land that the Kysars governed by the amended Keys lease, which the New Mexico Supreme Court held Amoco is not entitled to do by virtue of the communitization agreement.  We note, however, that the New Mexico Supreme Court's answer to the second certified question above appears to foreclose Amoco's arguments when it concluded that Amoco did "not enjoy a right of access over the surface estate of the portion of the leased area not subject to the [communitization] agreement when the lease did not expressly grant this right." *Id.* at 28.  We hold that Amoco is not entitled by virtue of the 1992 Communitization Agreement to use the portions of the back gate road that cross the land covered by the amended Jaquez lease (in Sections 27 and 34) to access the Sullivan E Well.

### E. Outstanding Issues

The district court dismissed the Kysars' remaining claims for trespass, unjust enrichment, and violation of the New Mexico Unfair Practices Act, finding

_____

[1]  Although the record is not precisely clear, most if not all of this land was sold to the Keys family, specifically Jessie Maude Keys, in 1950.       *See* Supl. App. at 1036 (Deed).  It is also not clear whether the New Mexico Supreme Court had the entire record, including the Supplemental Appendix, before it.  However, we note that the legal descriptions are not identical.  For purposes of this opinion, we shall refer to the land at issue as the land covered or governed by the amended Jaquez lease so as to avoid confusion.

13

that (1) Amoco's "actions do not constitute trespass as a matter of law," Aplt's App. doc. 10, at 242, and (2) the "claims for unjust enrichment and statutory violations are dependent on the existence of a trespass and misrepresentation as to the right of access and, there being no trespass and no misrepresentation, those claims will be dismissed." *Id.*

As to the unfair trade practices claim, we hold that the Kysars' claim does not fall within the ambit of the New Mexico Unfair Practices Act, N.M. STAT. ANN. § 57-12-2(D). That section explains that

> "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Practices Act, *a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services* or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce.

*Id.* (emphasis added). The Unfair Practices Act "does not apply to sales of real estate." *McElhannon v. Ford*, 73 P.3d 827, 832 (N.M. Ct. App. 2003). The Kysars based their claim on Amoco's alleged misrepresentations regarding its right of access to the Sullivan E well. Because the alleged misrepresentations are unconnected to a good or service, we hold that the claim does not fall within the parameters of the Unfair Practices Act.

As to the Kysars' claims for trespass and unjust enrichment, Amoco argues that these claims are barred by the four-year statute of limitations for each claim.

14

We hold that there are unresolved factual issues which prevent our resolving the statute of limitations issue, and we remand to the district court to make these determinations. In closing, we also note that any calculation of damages (as well as the determination of whether the tort or contract claims lie at all) in this case must take into account the Kysars' request and Amoco's agreement not to locate the well on the Kysars' alfalfa field, but rather to use existing roads to other wells as far as possible.

## IV. CONCLUSION

Amoco may access the surface of the Kysars' ranch that comprises the 36.84 acres committed to the communitization agreement in Section 22, and we AFFIRM the district court's grant of summary judgment as to this finding.

The 1992 Communitization Agreement did not confer upon Amoco the right to access the surface of the Kysars' ranch acquired from either Ms. Keys, located within Section 27 and 28, or that land governed by the amended Jaquez lease, located in Sections 27 and 34. Accordingly, as to the Kysars' claim regarding Amoco's use of the surface of their ranch acquired from Ms. Keys in Section 27 and 28, and Amoco's use of the surface of the ranch governed by the amended Jaquez lease in Section 27 and 34, we REVERSE the district court's grant of summary judgment in favor of Amoco; we AFFIRM the dismissal of the Unfair

15

Practices Act claim, and we REMAND for further proceedings, including the consideration of the statutes of limitations for the trespass and unjust enrichment claims, consistent with this opinion.