IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-036

Filing Date: January 19, 2012

Docket No. 29,756

RAYMOND L. KYSAR,
PATSY SUE KYSAR, and
THE KYSAR FAMILY TRUST,

      Plaintiffs-Appellants,

v.

BP AMERICA PRODUCTION COMPANY,
f/k/a AMOCO PRODUCTION COMPANY,

      Defendant-Appellee.

and

WILLIAM KARL JOHNSON and MARY M.
JOHNSON, his wife, and all of their heirs and
successors known and unknown, BP, the heirs
and successors of MAUDE KEYS, including, but
not limited to OLIE MAE McCOY, LAURA A.
TOVEY, CLARENCE RIDDLE, EUGENE RIDDLE,
JOYCE (JOY) RIDDLE LEE and TOMMY RALPH
RIDDLE, BEN CASE, HENRY and GEORGIA
KNOWLTON; ONOFRE R. JAQUEZ and ALVINA
JAQUEZ, his wife, and all of their heirs and successors,
known and unknown; COLEMAN OIL & GAS, INC.;
WILLIAM  HOLMBERG and JOYCE HOLMBERG,
his wife, SHIRLEY M. HOLMBERG, and UNKNOWN
ENTITIES A-Z; JOHN DOES I-X (as yet unidentified
agents, employees or contractors of BP America
Production Company, BP, or unknown entities A-Z,
who have trespassed on the Kysar Ranch); and all
other persons unknown, claiming any right, title,
estate, lien, easement, or interest in the real property
described in the complaint adverse to Plaintiffs'
ownership, or any cloud on Plaintiffs' title thereto,

**Defendants.**

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Robert A. Aragon, District Judge

Victor R. Marshall & Associates, P.C.
Victor R. Marshall
Albuquerque, NM

for Appellants

Holland & Hart, LLP
Bradford C. Berge
Jacqueline E. Davis
Santa Fe, NM

for Appellee

## OPINION

**VIGIL, Judge.**

{1}     This case presents us with an issue of first impression:  whether a plaintiff may appeal from a stipulated directed verdict when the parties have stipulated that the plaintiff cannot make a prima facie case due to in limine rulings made by the district court, the plaintiff reserves the right to appeal the in limine rulings, and the district court approves the stipulation.  Answering this question in the affirmative, we then address the in limine orders of the district court, and reverse.

## BACKGROUND AND PROCEDURAL HISTORY

{2}     Plaintiffs own the surface estate of the Kysar Ranch, which consists of some 600 acres of land along the Animas River.  The northern portions of the ranch were previously owned by Jessie Maude Keys, and the southern portions of the ranch were previously owned by Onofre and Alvina Jaquez.  In 1948, Keys and Mr. and Mrs. Jaquez executed separate oil and gas leases on their respective properties to C.H. Nye.  In 1949, Mr. and Mrs. Jaquez conveyed their surface estate, together with half of the underlying oil, gas, and mineral rights to Keys.  In 1956, Keys deeded the now unified surface estate to Henry and Georgia Knowlton, reserving the entire mineral estate.  By this transaction, all the minerals were severed from the surface estate, and access to the minerals was preserved because Keys also reserved a right of ingress and egress to access the oil, gas, and other minerals.  In 1983, Mr. and Mrs. Knowlton sold the entire surface estate to Plaintiffs, subject to all prior reservations of oil, gas, and other minerals.  The surface estate is now known as the Kysar Ranch.

**{3}** As a result of a series of assignments, BP America Production Company (BP) is now the lessee under both of the original 1948 oil and gas leases, and operates six wells within the boundaries of the Kysar Ranch. Only two roads access the wells: the "Back Gate Road," which starts at the southeast corner of the Kysar Ranch and travels north, first through the Jaquez lease, and continuing north through the Keys lease; and the "Bridge Road," which crosses the Keys lease. The Bridge Road goes across a bridge over the Animas River and because of concerns that it cannot support the heavy machinery and equipment trucks must carry to and from the wells, BP uses the Back Gate Road to access all the wells on the Kysar Ranch.

**{4}** Since Plaintiffs acquired the surface estate to the Kysar Ranch in 1983, their relationship with BP and Amoco, its immediate predecessor, has been marked by discord. A series of disputes were resolved by a settlement agreement in 2000 (the 2000 Settlement Agreement) between Plaintiffs and Amoco. The 2000 Settlement Agreement resolved claims that Amoco's operations had damaged the Kysar Ranch, constituted an unreasonable use of the surface, or otherwise constituted a trespass. However, the 2000 Settlement Agreement did not resolve one major disagreement: whether Amoco had a right to use the Back Gate Road to access the Sullivan Gas Com E-1 Well (the E-1 Well) located on Bureau of Land Management (BLM) land outside, but adjacent to, the Kysar Ranch.

**{5}** In accordance with the 1953 amendments to the Keys and Jaquez leases, the BLM land and a portion of the Kysar Ranch were subject to a 1992 communitization agreement under federal law. The parties disagreed about whether under these instruments or the leases, Amoco had a right to use the Back Gate Road on the Kysar Ranch to access the E-1 Well outside of the Kysar Ranch. Thus, Plaintiffs filed suit against Amoco in the United States District Court in 2000, alleging that its use of the Back Gate Road to access the E-1 Well outside the Kysar Ranch constituted an unlawful trespass under New Mexico law. This case resulted in two opinions, which we refer to herein as *Kysar I* and *Kysar II*. In *Kysar v. Amoco Prod. Co.*, 2004-NMSC-025, 135 N.M. 767, 93 P.3d 1272 (*Kysar I*), our Supreme Court answered questions certified by the Tenth Circuit. This was followed by *Kysar v. Amoco Prod. Co.*, 379 F.3d 1150 (10th Cir. 2004) (*Kysar II*), in which the Tenth Circuit decided the appeal before it after our Supreme Court answered the questions certified to it by the Tenth Circuit. These appeals determined that the 1992 communitization agreement did not grant Amoco a right to use the Back Gate Road located on the Keys lease to access the E-1 Well off the Kysar Ranch and that Amoco could not use that part of the Back Gate Road on the Jaquez lease for this purpose, because the Jaquez lease did not expressly grant such a right. *Kysar II*, 379 F.3d at 1156. After *Kysar I* and *Kysar II* were decided, Plaintiffs and BP, Amoco's successor, entered into a second settlement agreement in 2005 (the 2005 Settlement Agreement), which granted BP an easement to access the E-1 Well through the Kysar Ranch.

**{6}** However, the 2005 Settlement Agreement did not resolve BP's access to any other existing wells or any other matters. The 2005 Agreement expressly provides, "The parties expressly reserve whatever rights they may have concerning other wells, or any other

matters, including any rights of the parties under other agreements or instruments heretofore executed by the parties, except as expressly covered in this Agreement."

**{7}** The case before us concerns Plaintiffs' subsequently filed suit in which they contend that BP has no right to use the Back Gate Road crossing the Jaquez leases to reach wells located on the Keys leases. Plaintiffs demanded a jury and they sought damages and injunctive relief in several causes of action.

**{8}** After the jury was chosen, Plaintiffs' counsel advised that he intended to publish to the jury in the opening statement, placards with blown up excerpts of the opinions in *Kysar I* and *Kysar II.* BP objected, and the district court ruled that Plaintiffs' counsel was prohibited from using or displaying the placards or mentioning them or their content to the jury during the course of opening statement. Following additional discussion, Plaintiffs' counsel stated he could not give an intelligible opening statement and asked the district court to certify an interlocutory appeal. The district court inquired if this request stemmed from the ruling on the opening statement, and counsel responded, "No, it's the culmination of all the rulings that have been made over the last two years which leave me with essentially no case and no ability to present it." This referred to various in limine rulings made by the district court which prohibited Plaintiffs from presenting certain evidence at trial.

**{9}** BP stated that if Plaintiffs were unable to prove their case, the district court should enter a directed verdict. The district court expressed discomfort about entering a directed verdict in favor of BP before any evidence was introduced and, after additional discussion, Plaintiffs' counsel again reiterated that he had no case to present. The parties therefore agreed that in light of the in limine rulings of the district court, a stipulated order granting BP a directed verdict was appropriate. The stipulated order approved by the district court grants BP a directed verdict, while expressly preserving all of Plaintiffs' claims on appeal. In its entirety, the "Stipulated Order Granting Directed Verdict In Favor Of Defendant BP America Production Company" states:

> THIS MATTER came before the Court on May 19, 2009, on the parties' joint request for entry of a stipulated order directing a verdict in favor of BP American [sic] Production Company. The Court having heard the arguments of counsel, having reviewed the applicable law, and being otherwise fully advised in the premises, find that the parties' joint request is well-taken and should be GRANTED, as follows:

> 1. On May 18, 2009, a 12-person jury was selected, sworn into service, and empaneled for trial of this matter.

> 2. On May 19, 2009, prior to the parties' opening statements, the Court addressed and ruled upon certain evidentiary issues raised by the parties. The Court's decisions on those evidentiary matters are reflected in separate orders in this case.

4

3. In light of the Court's decisions and evidentiary rulings to date, the parties stipulated that a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiffs on any of the claims raised by Plaintiffs' complaint. In so stipulating, each party reserved the right to challenge the Court's aforementioned decisions and rulings on appeal.

4. In light of the parties' stipulation, which is well taken, the Court determines that the claims raised by Plaintiffs' complaint, insofar as they pertain to BP America Production Company, should be dismissed and finds that BP America Production Company is entitled to judgment as a matter of law.

5. The parties further stipulated that, respecting BP America Production Company's counterclaim, because Plaintiffs have not prevented or attempted to prevent BP or its personnel from accessing its wells on Plaintiffs' property, BP America Production Company has incurred no damage as a result of Plaintiffs' revocation or purported revocation of permission relating to such access. The parties further stipulated that no such damage will be incurred for so long as Plaintiffs do not prevent or attempt to prevent BP America Production Company or its personnel from accessing its wells on Plaintiffs' property.

6. In light of the parties' stipulation, which is well taken, the Court determines that the parties stipulation of dismissal respecting BP America Production Company's counterclaim pursuant to Rule 1-041(A)(2) NMRA is proper.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that, pursuant to Rule 1-050 NMRA, JUDGMENT is hereby entered in favor of BP America Production Company, and against Plaintiffs, on all issues raised by Plaintiffs' complaint, and that all of Plaintiffs' claims against BP America Production Company be and hereby are DISMISSED, *with prejudice*, and without leave to amend.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, pursuant to Rule 1-041(A)(2), BP America Production Company's counterclaim against Plaintiffs is hereby DISMISSED.

IT IS FINALLY ORDERED, ADJUDGED, AND DECREED that each party to this action shall bear its own costs, expenses, and attorney fees incurred to date.

**{10}** We first address whether this is an appealable order, and then address the orders on the various motions in limine in greater detail.

## APPEAL OF A STIPULATED CONDITIONAL DIRECTED VERDICT

**{11}** We characterize the order before us as a "stipulated conditional directed verdict." The directed verdict was conditionally stipulated to, with each party expressly reserving the right to challenge rulings of the district court on appeal, with success on appeal resulting in a reversal of the directed verdict. Whether such an order is appealable presents a question of law, which invokes de novo review. *Baca v. Los Lunas Cmty. Programs*, 2011-NMCA-008, ¶ 7, 149 N.M. 198, 246 P.3d 1070 (stating that a question of appellate jurisdiction presents a question of law, which we review de novo).

**{12}** BP contends that Plaintiffs are barred from appealing based on our precedent which ordinarily prohibits a party from appealing from a judgment entered with that party's consent. *See Gallup Trading Co. v. Michaels*, 86 N.M. 304, 305, 523 P.2d 548, 549 (1974) (stating the general rule that a judgment by consent cannot be appealed from). In *Gallup Trading Co.*, it was not necessary for the Supreme Court to address the various circumstances that would allow an exception to the general rule regarding appeals from stipulated and consent judgments. For the reasons which follow, we disagree with BP and conclude that under the conditions we hereinafter set forth, an appeal will lie from a stipulated conditional directed verdict.

**{13}** In general, a party cannot appeal from a judgment entered with its consent. E. H. Schopler, Annotation, *Right to Appellate Review of Consent Judgment*, 69 A.L.R.2d 755, § 3 (1960). However, the federal courts and some state courts have carved out exceptions allowing appeals from consent judgments in certain circumstances. Schopler, *supra* § 5. All the federal circuits except the Fifth Circuit allow an appeal from a consent judgment provided that the party explicitly reserves the right to appeal a contested issue.[1] Some state

---

[1]*See Amstar Corp. v. So. Pac. Transp. Co.*, 449 U.S. 924, 924 (1980) (Blackmun, J., dissenting) (dissenting from the denial of certiorari from the Fifth Circuit case declining to adopt other circuits' view stating that the denial "utterly ignores the parties' intent in executing a consent to a judgment and in their subsequent actions pursuant thereto"); *Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 683 (7th Cir. 2001) (noting that "[a] reservation of rights is incompatible with waiver" and citing all circuits that have adopted the view that consent judgments are appealable on issues reserved for appeal and noting that the Fifth Circuit is the exception); *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 223 (3d Cir. 2000) (adopting other circuits' view that consent judgments are appealable when the right to appeal is reserved; the court noted, "[w]hen it is clear from the agreement between the parties that the losing party intends to appeal . . . it is unlikely that an appeal will undermine the settlement agreement . . . . Indeed, in some situations, the option to craft a settlement agreement that provides for the possibility of an appeal on some contested issue

courts also allow an appeal from a consent judgment if the party has expressly reserved the right in the judgment.[2] Other states reach the same result when the trial court's rulings have effectively precluded the plaintiff from proceeding with the trial.[3] The broad reasons supporting these views are that: (1) it is a waste of judicial resources to require a plaintiff to undertake a trial which will in all probability be unsuccessful merely to obtain a judgment which is appealable; and (2) allowing an appeal in these circumstances effectuates the intention of the parties. *See Villano v. Waterman Convalescent Hosp., Inc.*, 105 Cal. Rptr. 3d 276, 279 (Ct. App. 2010). On the other hand, some state courts have concluded that parties cannot confer appellate jurisdiction by stipulating to a reservation of appellate rights, and they do not allow appeals from consent judgments. Schopler, *supra* note 6, § 29, at 814-15.

**{14}** New Mexico also adheres to the general rule that a judgment by consent is not appealable. *See Gallup Trading Co.*, 86 N.M. at 305, 523 P.2d at 549. While our courts have not conclusively decided whether to adopt an exception to this general rule, historical precedent points us in that direction. We begin with *Ward v. Broadwell*, 1 N.M. 75, 90-91 (1854), *superseded by statute as stated in State v. De Armijo*, 18 N.M. 646, 654, 140 P.

---

may facilitate settlement of other issues"); *Dorse v. Armstrong World Indus., Inc.*, 798 F.2d 1372, 1375 (11th Cir. 1986) (declining to follow Fifth Circuit view), *aff'd by Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487 (11th Cir. 1990).

[2]*See Uncle Joe's Inc. v. L.M. Berry & Co.*, 156 P.3d 1113, 1120-21 (Alaska 2007) (determining that parties may only appeal a stipulated judgment if they have expressly reserved the right to appeal, and the appeal is limited to those issues to which the right has been reserved); *N.J. Schs. Constr. Corp. v. Lopez*, 990 A.2d 667, 674 (N.J. Super. Ct. App. Div. 2010) (allowing reservation of appeal from a stipulated judgment provided that the parties agree that "the judgment would be vacated if the interlocutory order were reversed on appeal" and the order reflects that agreement explicitly or implicitly (internal quotation marks and citation omitted)).

[3]*See Hense v. G.D. Searle & Co.*, 452 N.W.2d 440, 444-45 (Iowa 1990) (holding that the plaintiff did not consent to judgment because the rulings of the trial court effectively precluded her from recovery); *Bldg. Indus. Ass'n v. City of Camarillo*, 718 P.2d 68, 71 (Cal. 1986) (In Bank) ("If consent was merely given to facilitate an appeal following adverse determination of a critical issue, the party will not lose his right to be heard on appeal."); *Carden v. Johnson*, 577 P.2d 513, 515 (Or. 1978) (en banc) (hearing appeal after the plaintiff voluntarily dismissed her case in order to obtain a final appealable order after the district court refused to enter a default judgment, noting that although illogical and unorthodox, it was a more efficient way to secure a right to appeal than by obtaining a writ of mandamus); *Marlboro Cotton Mills v. O'Neal*, 103 S.E. 781, 782 (S.C. 1920) (determining that when the district court's rulings foreclose the plaintiff's claims the plaintiff may enter a nonsuit that will not be considered voluntary by the court and will therefore be appealable).

1123, 1125 (1914) (decided under former law), in which our Supreme Court held that a party was entitled to appellate review when he abandoned his case by a nonsuit due to an adverse pretrial ruling of the district court. *Id.* The Court stated, "[w]here a party has been compelled to abandon his case in consequence of an adverse decision of the court, to which he excepts, upon a vital point in his cause, we are by no means prepared to concede that his action was voluntary." *Id.* On this ground, the Court considered the appeal on the merits notwithstanding the general rule prohibiting appellate review of voluntary nonsuits. *Id.*

{15}    More recently, and in a similar vein, in *Rancho del Villacito Condos., Inc. v. Weisfeld*, 121 N.M. 52, 908 P.2d 745 (1995), our Supreme Court noted with apparent approval authorities recognizing a "lack of consent" exception to the general rule, which prohibits an appeal from a consent judgment. *Id.* at 55, 908 P.2d at 748. This exception applies when the consent judgment is not completely voluntary because "an adverse ruling by the [district] court would effectively preclude recovery by the plaintiff or is completely dispositive of the case." *Id.* However, it was not necessary for the Court to decide whether to adopt the exception because the district court's rulings in that case did not fit the exception. *Id.*

{16}    In this case, the parties stipulated that in light of the district court's decisions and evidentiary rulings, "a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiffs on any of the claims raised by Plaintiffs' complaint." In light of this stipulation, requiring Plaintiffs to proceed with a trial when they cannot prove a prima facie case would result in a needless waste of scarce judicial resources, a needless waste of the jury's time, and a needless waste of time and expense by the parties and their counsel. Requiring a trial simply to preserve an issue for appellate review under these circumstances serves no useful purpose. Thus, the parties stipulated to entry of a judgment in favor of BP on all of Plaintiffs' claims. Further, Plaintiffs reserved the right to challenge the district court's decisions and rulings on appeal that prevented them from proving a prima facie case. Finally, the stipulation of the parties was approved by the district court.

{17}    Based on the foregoing, we conclude that an appeal will lie from a stipulated conditional directed verdict when the following conditions are satisfied: (1) rulings are made by the district court, which the parties agree are dispositive; (2) a reservation of the right to challenge those rulings on appeal; (3) a stipulation to entry of judgment; and (4) approval of the stipulation by the district court. Recognizing an exception to the general rule that an appeal will not lie from a judgment entered by consent when these conditions are satisfied conserves scarce judicial resources and preserves the constitutional right to appeal. Having determined that this case is properly before us, we turn to the pretrial rulings of the district court that Plaintiffs challenge on appeal.

**THE DISTRICT COURT RULINGS**

{18}    We first address Plaintiffs' arguments concerning the *Kysar* opinions. The district court stated that counsel could not mention them in opening statements, as their relevance

was not yet clear, but it was not ruling that Plaintiffs could not use them as evidence because this would require making an evidentiary ruling in a vacuum. The district court stated, "[I]f you have evidence that you wish to present that renders those opinions admissible, then you can seek to do that." The written order subsequently filed states, "Plaintiffs, through their counsel, are prohibited, in opening statement, from referencing prior court decisions between the parties and from showing the jury excerpts from those decisions. During trial, [P]laintiffs may renew their attempt to reference or introduce evidence respecting such decisions, subject to BP's ability to object and the Court's ability to rule on the admissibility of such evidence."

**{19}** Plaintiffs have failed to cite any authority, and we find none, in which an appellate court held that a district court committed reversible error by ordering counsel not to refer to certain facts in the opening statement. Therefore, we do not give further consideration to this issue. *State v. King*, 2007-NMCA-130, ¶ 17, 142 N.M. 699, 168 P.3d 1123 (declining to consider arguments unsupported by authority or analysis).

**{20}** We now turn to whether the district court's ruling on the admissibility of the *Kysar* opinions into evidence constituted reversible error. Ordinarily, we review an evidentiary ruling of the district court admitting or excluding evidence for an abuse of discretion, while reviewing any interpretation of law underlying the ruling de novo. *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 13, 146 N.M. 453, 212 P.3d 341.

**{21}** Importantly, in this case, no offer of proof was made, and no evidence was ever presented to the jury. Moreover, the district court ruled that during trial, Plaintiffs could seek to introduce the evidence, whereupon it would consider whether to admit the evidence. Reconsideration of the ruling would then be made in the specific context of the case at that point in the trial. However, since there was no trial, we have no basis for determining whether excluding the evidence might constitute error, and even if we could, we have no context for assessing whether excluding the evidence was prejudicial. It is a well-established principle of appellate review that the appellant has the burden of ensuring that the appellate court is provided with a complete record and transcript of proceedings that is sufficient to review the appellant's claims. *State v. Martinez*, 2002-NMSC-008, ¶ 48, 132 N.M. 32, 43 P.3d 1042; *see Vill. of Angel Fire v. Wheeler*, 2003-NMCA-041, ¶ 25, 133 N.M. 421, 63 P.3d 524 (stating that for appellate review to be meaningful, the record must be of sufficient completeness to permit proper consideration of the appellant's claims); *State v. Wilson*, 116 N.M. 793, 797, 867 P.2d 1175, 1179 (1994) ("It was [the] defendant's burden to make a sufficient record for review on appeal."). Furthermore, even if a district court makes an erroneous evidentiary ruling, it does not constitute reversible error unless it results in prejudice. Rule 11-103(A) NMRA ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"); *City of Albuquerque v. Ackerman*, 82 N.M. 360, 365, 482 P.2d 63, 68 (1971) ("Harmless error in the exclusion of evidence cannot be the basis for a new trial."); *El Paso Elec. Co. v. Real Estate Mart, Inc.*, 98 N.M. 570, 574, 651 P.2d 105, 109 (Ct. App. 1982) ("A party must show prejudice before reversal is warranted."). Under the circumstances, there is no issue for us

9

to decide, as we have no basis for reviewing whether the order of the district court constituted reversible error. Any attempt to undertake an analysis at this point would result in an advisory opinion, which we decline to give. *See Santa Fe So. Ry., Inc. v. Baucis Ltd. Liab. Co.*, 1998-NMCA-002, ¶ 24, 124 N.M. 430, 952 P.2d 31 ("Our concern with issuing advisory opinions stems from the waste of judicial resources used to resolve hypothetical situations which may or may not arise.").

**{22}**     Prior to trial, the district court also made certain in limine rulings: (1) prohibiting Plaintiffs from introducing any evidence in support of their claim that their consent to BP to use the Back Gate Road was fraudulently or mistakenly induced by BP's misrepresentations about its rights to do so; (2) prohibiting Plaintiffs from introducing any evidence that BP refused to produce information or documents supporting its claimed right to use the Back Gate Road; (3) prohibiting Plaintiffs from introducing any evidence of damages for any alleged trespass occurring prior to June 20, 2005, the date that the complaint was filed; (4) prohibiting Plaintiffs from introducing any evidence of payments they received from BP for the easement on the Back Gate Road pursuant to the 2005 Settlement Agreement or payments for an easement on the Back Gate Road, which Plaintiffs granted to a third party; and (5) prohibiting Plaintiffs from introducing any evidence concerning the 2005 Settlement Agreement, and related evidence, if any.

**{23}**     A motion in limine is merely a preliminary determination by a district court regarding the admissibility of evidence. *Proper v. Mowry*, 90 N.M. 710, 715, 568 P.2d 236, 241 (Ct. App. 1977).

> The Order entered should be clear and unequivocal. It should provide and advise counsel such ruling is without prejudice to the right to offer proof during the course of the trial, in the jury's absence, of those matters covered in the motion and if it then appears in the light of the trial record that the evidence is relevant, material and competent it may then be introduced, subject to opposing counsel's objections, as part of the record of evidence for the jury's consideration.

*Id.* (internal quotation marks and citation omitted). Thus, motions in limine are interlocutory orders which are subject to reconsideration by the district court during the trial. "It is often impossible to make definitive evidentiary rulings prior to trial because admissibility will depend on the state of the evidence at the time of the ruling." *State v. Dubois*, 556 A.2d 86, 87-88 (Vt. 1988). As the trial unfolds, and other evidence admitted, the context may demonstrate that excluded evidence is, in fact, relevant and admissible, making it proper for the district court to revisit, and modify or reverse its prior ruling. This is due to the very nature of a motion in limine. "[M]otions in limine seeking advance rulings on the admissibility of evidence are fraught with problems because they are necessarily based upon an alleged set of facts rather than the actual testimony which the trial court would have before it at trial in order to make its ruling." *State v. Young*, 983 P.2d 831, 833 (Idaho 1999). In addition, "[R]ulings in limine can never be totally accurate in balancing the probative and

10

prejudicial values of a piece of evidence which is best evaluated in the total trial context." Rothblatt & Leroy, *The Motion in Limine in Criminal Trials: A Technique for the Pretrial Exclusion of Prejudicial Evidence*, 60 Ky. L.J. 611, 633 (1972). Thus, the ruling on the motion in limine may subsequently be changed, expanded or modified by the district court in light of the development of the evidence at trial. *See Proper*, 90 N.M. at 715, 568 P.2d at 241.

**{24}** Because of their nature, motions in limine are inherently difficult to review on appeal under an abuse of discretion standard in the circumstances before us in this case. There was no trial, so we have no context in which to determine whether the evidence is admissible. Further, since no evidence has been presented, we have no basis for assessing the effect of the ruling, and thus, whether prejudice resulted. We therefore conclude that, as with the district court's rulings concerning the *Kysar* opinions, we do not have an adequate record or basis for addressing Plaintiffs' arguments that the district court's in limine rulings 3, 4, and 5 set forth above constituted reversible error. *See Villano*, 105 Cal. Rptr. 3d at 288 (holding that the tentative evidentiary rulings of the district court and posture of the case on review left the appellate court with no way of knowing what the evidence would have shown, which defeated the plaintiff's ability to show prejudice). We therefore decline to address Plaintiffs' arguments concerning these rulings.

**{25}** However, we do have an adequate record to assess the district court's in limine rulings 1 and 2. Those issues arose as follows. BP filed a motion in limine seeking to prohibit Plaintiffs from introducing any evidence that the permission Plaintiffs gave to BP to enter the Kysar Ranch was the product of misstatements or misrepresentations by BP. BP contended that the first time Plaintiffs raised either misrepresentation or mistake was when they included these claims in their requested jury instructions; that Plaintiffs never pled mistake or fraud, either specifically or generally; and that Plaintiffs had not attempted to amend their pleadings to include claims of fraud or mistake. BP asserted that because Plaintiffs "have not complied with the pleading rules," and "have not heretofore alleged misrepresentation (fraud) or mistake," that Plaintiffs "cannot now raise these claims." BP therefore contended that Plaintiffs "should be barred from offering testimony or evidence in support of them."

**{26}** In response, Plaintiffs referred the district court to Paragraphs 26, 27, and 62-64 of the complaint, which they said "specifically allege misrepresentation, fraud, and concealment." In those paragraphs, the complaint alleges:

> 26. In response to the Kysars' objections, BP continues to falsely represent that it has the right to cross the Kysar Ranch to reach existing and proposed wells. However, no such express written conveyance exists.

> 27. Amoco (BP's predecessor in interest) knowingly made false representations about its supposed right to cross the Kysar Ranch which

11

tended to and actually did deceive and mislead the Kysars in connection with BP's production and purchase of coal seam gas from the wells located on the Kysars' land.

. . . .

62.     Plaintiffs have asked BP for pertinent information concerning the basis for BP's claimed access rights on the Kysar Ranch, including the documents relating to the unitized or pooled tracts that affect the Kysar Ranch, and for those units contiguous to the Kysar Ranch.  BP has refused to provide the information sought.  The Kysars do not have ready access to this information, which is not regularly tracked by title companies.

63.     BP continues to insist that it has the right to cross the  Kysar Ranch where and when it pleases to access existing wells and any new wells that it locates anywhere on the Kysar Ranch.  BP insists that it may use the Back Gate Road access for all of its existing wells and any new ones that it drills.  BP is using roads located on one "unit" to gain access to wells located on other "units."

64.     BP's dilatory, hide-the-ball tactics, when it has superior knowledge of the unitization agreements and oil and gas leases that impact on its location of various new wells, and its refusal to share this information with [P]laintiffs, constitutes a breach of the duty of good  faith and fair dealing.

Plaintiffs asserted, "Misrepresentation can encompass innocent mistake, bona fide, but erroneous belief, negligent misrepresentation and intentional misrepresentation.  It is for the jury to decide which it is once the evidence has been introduced and considered."

**{27}**    The district court agreed with BP that Plaintiffs had not properly pled misrepresentation, mistake, or fraud, and ordered, "Plaintiffs are prohibited from offering any evidence or testimony in support of their claim that the consent that Mr. Kysar gave Amoco/BP, to use the Back Gate Road for access to wells on the Kysar Ranch, was fraudulently or mistakenly induced."

**{28}**    Rule 1-009(B) NMRA states that allegations of fraud be stated with particularity in the complaint.  However, this does not mean that the complaint must  use words such as "fraud" or "fraudulent" to meet the pleading requirement so long as "the facts alleged are such as constitute fraud in themselves, or are facts from which fraud will be necessarily implied." *Romero v. Sanchez*, 83 N.M. 358, 359, 492 P.2d 140, 141 (1971) (internal quotation marks and citation omitted).  Furthermore, our rules merely require pleadings to contain a short and plain statement of the claim or defense, and each pleading averment to be "simple, concise and direct," even when pleading with particularity.  *See* Rule 1-

12

008(E)(1) NMRA; *Maxey v. Quintana*, 84 N.M. 38, 40, 499 P.2d 356, 358 (Ct. App. 1972). The allegations we have quoted above are sufficient to allege issues of misrepresentation, fraud, and mistake and they put BP on notice that such claims were being made. *See Robertson v. Carmel Builders Real Estate*, 2004-NMCA-056, ¶¶ 33-35, 135 N.M. 641, 92 P.3d 653 (concluding that general and specific allegations of ongoing false representations were sufficient to plead fraud under Rule 1-009(B).

{29} We agree with Plaintiffs that the foregoing allegations are sufficient to raise issues of misrepresentation, fraud, and mistake. Accordingly, it was error for the district court to exclude evidence that the consent given to Amoco/BP, to use the Back Gate Road for access to wells on the Kysar Ranch, was fraudulently or mistakenly induced. Further, the allegations make evidence of BP's refusal to produce pertinent documents purporting to give it a right to cross the Kysar Ranch to access existing and future wells, relevant to Plaintiffs' claim that BP breached the duty of good faith and fair dealing. *See* Rule 11-401 NMRA ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Rule 11-402 NMRA (providing that all relevant evidence is admissible).

**CONCLUSION**

{30} The "Stipulated Order Granting Directed Verdict In Favor Of Defendant BP America Production Company" is reversed, and the case is remanded to the district court for further proceedings consistent with this Opinion.

{31} **IT IS SO ORDERED.**

 

 

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

 

**MICHAEL D. BUSTAMANTE, Judge**

 

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Kysar v. BP America Prod. Co.*, No. 29,756**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-AO | Appealable Order |
| AE-FE | Fundamental Error |
| AE-HE | Harmless Error |

13

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-DV | Directed Verdict |
| CP-ML | Motion in Limine |
| CP-SN | Stipulation |
| | |
| **PR** | **PROPERTY** |
| PR-ES | Easement |
| PR-FR | Fraud |
| PR-MD | Mineral Deed |
| PR-MR | Mineral Resources |
| PR-RW | Right of Way |
| PR-SD | Surface Destruction Doctrine |